## SNIDER *v.* GAULTNEY ET AL.

[No. 57, September Term, 1958.]

*Decided December 16, 1958.*

334

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harold Buchman* for the appellant.

*W. Lee Harrison*, with whom were *Douglas G. Bottom* and *Richard C. Murray* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment N.O.V. entered by the trial court in favor of the defendants, employer and insurer, in a workmen's compensation claim. Two issues were submitted to the jury: whether the claimant was an employee of Gaultney at the time of his injury, and whether he sustained an accidental injury in the course of his employment. The jury answered "Yes" on both issues. The trial court granted the motion for judgment N.O.V. on the ground that under the evidence the claimant was an independent contractor as a matter of law. No question is raised on this appeal as to the second issue. The appellant contends that there was legally sufficient evidence to support the jury's finding on the first issue.

The appellee, Gaultney, had been engaged in the contracting business for a number of years. The particular work in which he specialized was that of a "dry-wall applicator", described as the applying or nailing of sheet-rock to the interior of houses under construction, and "taping and finishing it, ready for painting and papering." He contracted to perform this work with various developers and builders and had seven regular employees operating in two crews, one to apply the sheet-rock and one to tape and finish it. These regular employees were carried on his payroll and paid an hourly wage, from which was deducted workmen's compensation insurance, and social security and income taxes withheld. From time to

time as the volume of work required, he would also engage the services of other workmen to apply the sheet-rock at a fixed price per sheet. These additional workmen were not carried on his payroll, and there were no deductions similar to those made in the case of his regular employees.

The claimant, sixty-two years of age, had worked for Gaultney on a number of previous occasions over a period of years. He had come to this area from West Virginia about six years before, and solicited work as a sheet-rock fastener. He was always accompanied by his sons or other young men, and they worked as members of a "team". They furnished their own tools, such as hammers, nail aprons, knives and T-squares. Gaultney furnished the nails, and either he or the builder would furnish the sheet-rock. Each sheet was about 12 feet long and 4 feet wide, and weighed about 75 pounds. It was necessary to have a helper or helpers to hold each sheet in position while it was being nailed to the walls and ceilings. It appears that Gaultney also furnished trestles and rough lumber for scaffolds which the team erected where necessary to reach the ceilings. The rate of pay on a previous job had been eighty cents per sheet. Sometimes Gaultney would pay for the work in one check which they would divide, sometimes he would issue separate checks to each member of the team.

About two weeks before the accident in question, the claimant, accompanied by his 16 year old son, Franklin, and another man, 21 years of age, drove to a site where Gaultney was working on the interior of houses under construction, and asked for work. Gaultney pointed out a house to them and told them to start. When they had finished there, he directed them to work in another house. On Friday of the first week he paid them $99.20 (124 sheets at eighty cents per sheet) in a single check made payable to Franklin. During the second week the claimant sustained a back injury by falling from a scaffold. Gaultney told him he would pay his doctor's and hospital bills. The compensation claim was filed in due course.

It was conceded that the work of fastening the sheet-rock did not require close supervision. Gaultney would not visit the scene of their operation more than once a day, although

inspectors of the builder, or other inspectors, examined their work from time to time. However, there was testimony that Gaultney would usually explain the layout, and tell them whether they should cover the spaces over doors and windows, the "headers", and how to deal with electrical outlets. Sometimes he would tell them how to cut the sheet-rock to fit angles, where the joints should be placed, and how many nails should be used in the studdings. If the work was not satisfactory, he would make them do it over. They did not punch a time clock, but they usually worked regular hours, from 8:00 A. M. to 4:30 P. M. Gaultney told them he would "like them to" do that. Gaultney testified he did not care what hours they worked, but admitted he expected them to proceed without delay. If they were "slow and doing a bad job", he would "have to get someone else in there." Gaultney also admitted that the nature of the work was exactly the same, whether performed by his regular employees or the additional "team", and his control and supervision was about the same in each case. It would appear from Gaultney's testimony that the reason he did not carry the claimant and the other members of the team upon his payroll was not so much from a belief that they were independent contractors, by the sheet or by the house, as from a belief that their employment, being temporary and intermittent, was "casual". The statute excludes casual employees from coverage and sometimes the line is difficult to draw. See *State Accident Fund v. Jacobs,* 134 Md. 133, and cases cited. But no such issue was raised in the instant case, and we express no opinion on the point.

It is conceded that the claimant's right to recover in the instant case turns upon whether at the time of his injury he was an employee of Gaultney, or an independent contractor. The statute covers only employees as defined in Code (1957), Art. 101, Sec. 67 (3). "Independent contractor" is not defined in the statute, but has been judicially defined as "one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result." *Williams*

*Constr. Co. v. Bohlen,* 189 Md. 576, 580, citing *Hygeia Ice Etc., Co. v. Schaeffer,* 152 Md. 231, 237, and *Election Supervisors v. Balser,* 172 Md. 187. It was held in the *Bohlen* case that the mere fact that the claimant was not carried on the payroll, and that no deductions were made from the payments to him, was not controlling. The cases also indicate that the fact that employment is on a piece-work basis, and not for a completed job, is not only not conclusive, but is indicative of employment. *Charles Freeland & Sons, Inc. v. Couplin,* 211 Md. 160, 172; *Hygeia Ice Etc., Co. v. Schaeffer, supra.* Cf. *Decola v. Cowan,* 102 Md. 551. See also *Lumber Mutual Casualty Ins. Co. v. Stukes,* 164 F. 2d 571 (C. C. A., 4th), and 1 Larson, *Workmen's Compensation Law,* § 44.33 (b). The cases stress the right of control and supervision retained by the employer (cf. *Greer Lines Co. v. Roberts,* 216 Md. 69, 80, and *Sun Cab Co. v. Powell,* 196 Md. 572, 577), but list a number of subsidiary factors that may be considered, one of which is whether or not the work is a part of the regular business of the employer. *Charles Freeland & Sons, Inc. v. Couplin, supra* (p. 170), citing *Restatement, Agency,* Sec. 220, Vol. 1, p. 483. See also *Keitz v. National Paving & Contr. Co.,* 214 Md. 479, 491, and *Maryland Casualty Co. v. Sause,* 190 Md. 135. Larson suggests that this should be the controlling test in compensation cases. 1 Larson, *supra,* § 45.00 *et seq.*

In the instant case, we think there was evidence from which the jury might properly find that the claimant was an employee and not an independent contractor. It may be inferred from the evidence that the work performed by the claimant was of the same character as that performed by regular employees of Gaultney in the performance of his contract with the builder to apply sheet-rock to specified houses under construction, which was a part of his regular and principal business. It may also be inferred that the claimant could have been discharged at any time, upon payment for the sheets satisfactorily applied, that the claimant was subject to the same direction, supervision and control as regular employees, and that it was implicit in the agreement that the work would be prosecuted as expeditiously as possible. The control ex-

ercised in the instant case, as to the layout in each particular house, would seem to be greater than that exercised over the experienced logger in the *Couplin* case, and we think that case is controlling. There it was shown that the claimant chose and paid his helpers, but it was held that the question as to whether he was an independent contractor was properly left to the jury.

The appellees argue that the claimant could not be found to be an employee, because Gaultney did not have the power of selection and engagement of the various members of the so-called "team". Gaultney testified that "it was up to them to get whoever they wanted to do the work." We think this circumstance would not be controlling. We think the evidence would support an inference that the claimant, as the senior member of the group and the one who had previously made similar arrangements to obtain work, was the one with whom the bargain was made, despite testimony that Gaultney was indifferent to the actual makeup of the team at any particular time, and that he gave the check for the first week's work to the claimant's son. It is conceded that a bargain was made for the performance of the work, and whether it was made with the claimant individually, or with the "team" collectively, would not seem to preclude a finding that the claimant was an employee within the meaning of the statute. Cf. *Angell v. White Eagle Oil & Refining Co.,* 210 N. W. 1004 (Minn.), and *Hiebert v. Howell,* 85 P. 2d 699 (Idaho).

*Judgment reversed and case remanded, costs to be paid by the appellees.*