## L. & S. CONSTRUCTION COMPANY, INC. ET AL. *v.* STATE ACCIDENT FUND ET AL.

[No. 68, September Term, 1959.]

52

*Decided November 24, 1959.*

54

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert A. Amos,* for appellant.

*John W. Mitchell, Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General,* and *J. Howard Holzer, Special Attorney,* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

L. & S. Construction Company, Inc. (L & S) and its insurer, Globe Indemnity Company, appealed to the Circuit Court for Prince George's County from a decision of the Workmen's Compensation Commission. The Commission held that one George R. Addison, who was fatally injured in the course of his work, was an employee of L & S only, and not of Weygandt Engineering & Construction Company (Weygandt), or of both L & S and Weygandt, and made an award of death benefits accordingly. The case was heard in the Circuit Court by Judge Marbury, sitting without a jury. The Circuit Court affirmed the order of the Commission and L & S and its insurer appealed to this Court. Liability for payment of Workmen's Compensation benefits is conceded. The appellees are Weygandt and its insurer.

The question is whether the decedent was at the time of his fatal injury an employee of L & S, of Weygandt, or of both, within the meaning of the Workmen's Compensation Act. Who is liable for the payment of the death benefits award, of course depends on the answer to this question.

The case is submitted to us by stipulation of counsel on an agreed statement of facts, pursuant to Rule 828 g of the Maryland Rules, and on the opinion and order of the Circuit

Court. This Court expresses its appreciation to counsel for both sides for the succinctness of this presentation. The agreed statement (omitting three paragraphs, the contents of which have already been sufficiently covered) is as follows:

"On May 4, 1957, George R. Addison was fatally injured on a job site of Weygandt * * * when a tractor operated by him and owned by L & S * * * overturned. At the time the tractor was pulling a sheep's foot roller owned by Weygandt.

* * *

"L & S was engaged in road construction. Weygandt, at the time of the accident, was doing work involving earth moving under a contract between it and the Washington Suburban Sanitary Commission in Brentwood, Prince George's County, Maryland. L & S was not involved in that job except to furnish a tractor and an operator thereof under the following circumstances:

"Smith Asphalt (A. H. Smith) an owner of L & S required the use of a loader owned by Weygandt and in exchange for the use of the loader by Smith, L & S was told by Smith to furnish a tractor and operator to Weygandt.

"The tractor could be operated only by an employee of L & S. Weygandt had the right to remove the operator of the tractor from the job at any time, but not to put one of its employees on the tractor. It had the right to request L & S to furnish another operator for the tractor.

"The operator of the tractor reported to a foreman of Weygandt and the foreman signed tickets showing the number of hours the tractor and operator worked on Weygandt's job and in turn, L & S would bill Smith Asphalt (A. H. Smith) who paid L & S.

"Smith owed Weygandt for the use of a loader and this obligation was being discharged by Smith by his payments to L & S for Weygandt's use of the tractor.

"L & S was not in [the] business of renting equipment. It had, however, rented equipment before on occasion.

"Weygandt controlled the actual operation on the job and the only instruction given to the operator of the tractor by L & S was to report to Weygandt's foreman. At the end of

the day's work the tractor would remain on the job site and in the mornings the operator would report to the job site.

"It was contemplated that Weygandt had the right to use the tractor until it had completed the particular job.

"The tractor operator, Addison, was hired by L & S. He was paid by L & S. L & S also deducted taxes and social security from Addison's pay and provided Workmen's Compensation Insurance for him.

"* * * [T]he operator, Addison, was furnished for the specific purpose of operating the tractor owned by L. & S. Construction Company, Inc."

In *Sun Cab Co. v. Powell*, 196 Md. 572, 577, 77 A. 2d 783, where the question was whether the injured employee was an employee of one employer or another, the Court said: "[T]he rules for determining the existence of the relation of employer and employee under the [Workmen's Compensation] Act are the same as the rules at common law for determining the relation of master and servant." See also *Charles Freeland & Sons, Inc. v. Couplin*, 211 Md. 160, 126 A. 2d 606, and *Snider v. Gaultney*, 218 Md. 332, 146 A. 2d 869, each of which was a Workmen's Compensation Act case involving the question whether the worker was an employee or an independent contractor. In each the common law rules to determine the question of employer-employee relationship were applied.

"[T]he decisive test in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done." *Sun Cab Co. v. Powell, supra* (196 Md. 578). It is not impossible, as that case recognized, to make a contract under which the power to hire or discharge would be in one person and the power of control in another, and that in such case the person having the power of control would be the master. The general rule as to control was recognized in *Baltimore Transit Co. v. State, Use of Schriefer*, 184 Md. 250, 265, 40 A. 2d 678, and the rule as stated in the *Sun Cab* case has been restated or recognized in a number of recent cases in this Court: *Charles Freeland & Sons, Inc. v. Couplin, supra* (211 Md. at

169) ; *W. J. Dickey & Sons, Inc. v. State Tax Comm.,* 212 Md. 607, 612, 131 A. 2d 277; *Keitz v. National Paving & Contracting Co.,* 214 Md. 479, 491, 134 A. 2d 296; *Snider v. Gaultney, supra* (218 Md. at 337). See also *Stem v. Nello L. Teer Co.,* 213 Md. 132, 139-140, 130 A. 2d 769.

Several criteria have been developed for use in applying the general rule. The *Sun Cab* case lists these four: (1) the selection and engagement of the servant; (2) the payment of wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct (196 Md. 577-578). *Keitz v. National Paving & Contracting Co., supra* (214 Md. at 491) adds a fifth test to those just stated, which is "(5) * * * whether the work is a part of the regular business of the employer." The *Keitz* case then goes on to state that none of these *indicia,* excepting the fourth, standing alone, seems controlling. The *Sun Cab* case recognizes that the power to hire and discharge is not necessarily vested in the person having control. The *Keitz* opinion also points out, citing the *Sun Cab* and *Freeland* cases, that "it is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his *right* to do so that is important." (214 Md. at 491.)

Cases presenting the question as to which of two employers —the "general" employer or the "special" employer, as they are sometimes called—is to be regarded as *the* employer of an employee in a given situation, have frequently involved vehicles and drivers furnished by the general employer to someone else. The same general principles which apply in the vehicle cases also apply in others. Thus, in *Standard Oil Co. v. Anderson,* 212 U. S. 215, the question of control was held decisive where the question was whether a winchman was the employee of the owner of the winch and of the dock on which it was situated, who was his general employer, or of a stevedore engaged in loading a ship alongside the dock. The winchman was being directed as to the actual operation of the winch by the stevedore's foreman. The holding there was that the winchman remained the servant of his general employer. See also *Stem v. Nello L. Teer Co., supra,* where

there was a possible question as to whether a road flagman was an employee of the general contractor on a road construction job or of a subcontractor hauling dirt for the general contractor. There, too, the question of control was regarded as decisive.

The cases are often broken down into "loan" or "borrowing" cases and "hiring" cases, and it is said that the "principles governing the one do not apply altogether to the other, for the scope of the servant's employment is a distinguishing factor." *Baltimore Transit Co. v. State, etc., supra* (184 Md. at 268). As that case also points out, a "borrowing" or "loan" case is one in which the owner loans or transfers, on a gratuitous basis, his vehicle with driver, and a hiring case is one where as a part of his business, the owner hires them to another. The present case may not fit completely into the standard pattern of either category. The tractor and driver were not furnished gratuitously, for Weygandt paid for them through crediting Smith's account for the payments which Smith made to L & S. On the other hand, it was not a regular part of the business of L & S to rent out equipment, though it occasionally had done so. Yet, the type of work which Addison was to perform for Weygandt was of a type which he was employed to do for L & S. Whether this case falls within one classification or the other does not seem to be necessarily of controlling importance, for we think the result would be the same either way. As was said in the *Baltimore Transit* case (184 Md. at 265-266): "The test under both classifications is to determine who had the power of 'direction and control' at the time in question."

In the *Baltimore Transit* case general rules are stated which are deduced from both "loan" or "borrowing" cases and from "hiring" cases. There (184 Md. at 265) the Court pointed out "the presumption of law that an owner who furnishes a vehicle, together with a driver to operate it, is responsible for the driver's negligence", but that the presumption might be rebutted, citing *Sacker v. Waddell,* 98 Md. 43, 56 A. 399. The Court went on to say: "If a master parts with the power of control and direction over a servant, and the latter becomes engaged in another's work beyond the

scope of the servant's general employment, it may be fairly said that, as a general rule, the master would be relieved from liability for his employee's negligence while on that special assignment." We do not think that the work which Addison was doing for Weygandt was outside the scope of his general employment.

The fact that control over details as to what work is to be done and the way in which it is to be done may be exercised by the person to whom the employee is sent, will not of itself cause the employee to become the servant of the person to whom he is sent. *W. S. Quinby Co. v. Estey,* 221 Mass. 56, 108 N. E. 908; *Baltimore Transit Co. v. State, etc., supra; Maryland Casualty Co. v. Sause,* 190 Md. 135, 57 A. 2d 801. In both of the cases last cited the hirer had considerable control over details. See also *Malisfski v. Indemnity Insurance Co. of North America,* 135 F. 2d 910 (C.C.A., 4th), a case applying Maryland law and quite similar in facts and result to the *Baltimore Transit* case.

As to the inference that the original service continues and for factors supporting that inference, see *Restatement* (Second), *Agency* § 227, comments b and c (1958).

In the *Baltimore Transit* case, the Court further said (184 Md. 265): "Whether or not the circumstances of a given case are legally sufficient to overcome the presumption against the master or owner is ordinarily a question for the jury, but where the rebutting testimony is uncontradicted, it becomes one for the court to determine as a matter of law." Similar statements or holdings are to be found in *Sacker v. Waddell, supra; Hooper v. Brawner,* 148 Md. 417, 129 A. 672; *Baur v. Calic,* 166 Md. 387, 171 A. 713; and *Sun Cab Co. v. Powell, supra.* It is also settled, we think, that on appeals from the Workmen's Compensation Commission or its predecessor, the State Industrial Accident Commission, where the facts or inferences therefrom, or both, are in dispute, such questions are to be determined by the jury. *Bogatsky v. Swerdlin,* 152 Md. 18, 135 A. 416 (whose employee; and employee or independent contractor); *Hygeia Ice & Coal Co. v. Schaeffer,* 152 Md. 231, 136 A. 548 (employee or independent contractor); *Williams Construction Co. v. Bohlen,*

189 Md. 576, 56 A. 2d 694 (employer or independent contractor; or casual employee); *Maryland Casualty Co. v. Sause, supra* (employee or independent contractor; and if an employee, whose); *Sun Cab Co. v. Powell, supra* (whose employee); *Charles Freeland & Sons, Inc. v. Couplin, supra* (employee or independent contractor); *Snider v. Gaultney, supra* (same question).

The instant case was tried before the court without a jury, but disputed questions of fact which would have been for the determination of the jury are to be determined by the judge as questions of fact, not as questions of law. *Coastwise Shipbuilding Co. v. Tolson,* 132 Md. 203, 208, 103 A. 478. See also *Maryland Casualty Co. v. Sause, supra.* Cf. *Harrison v. Central Construction Co.,* 135 Md. 170, 108 A. 874, distinguished in the *Hygeia* case as one in which there was no dispute and no room for dispute as to the facts and inferences to be drawn therefrom. Cf. also *Stem v. Nello L. Teer Co., supra* (213 Md. at 139-140), where a similar situation to that in the *Harrison* case appeared as to one defendant.[1]

Though there is no dispute as to the basic facts here, there is a dispute as to the ultimate and decisive inferences to be drawn therefrom. We therefore cannot agree with the appellants that, as matter of law, Addison was an employee of Weygandt.

After reviewing the facts and citing the *Sun Cab Co.* and *Keitz* cases, Judge Marbury said in his opinion in the Circuit Court (the "Construction Company" being L & S): "Even when the question of 'control' is considered alone and apart from the right to hire, dismiss, and the payment of wages, the Court concludes that the greater control in this case was exercised by the Construction Company rather than by Weygandt who was only concerned with having the dirt packed by a sheep's foot roller drawn by the tractor which had been loaned or rented. Actually Weygandt could only point out the dirt to be rolled and could only approve or disapprove of the manner in which it was being done by Addison. If it

---

1. No point has been made in this case of the presumption in favor of the correctness of the Commission's decision.

disapproved it could do no more than so inform Addison or the Construction Company, who alone had the right to order Addison to change his manner of operation or remove the tractor from the job. It thus appears that the very slight right by Weygandt to control Addison's operation of the tractor is far outweighed by the Construction Company's control of Addison's operations as his general employer and when considered in conjunction with his hiring, the payment of his wages, and the right to dismiss him compels the conclusion that at the time of his injury Addison was the employee of the Construction Company rather than of Weygandt.

He also concluded that "the mere fact that the dirt to be rolled was encompassed within Weygandt's project, under the facts in this case," would not require a finding that Addison was Weygandt's employee.

Judge Marbury was the trier of the facts in this case. We think that the undisputed facts and the inferences reasonably to be drawn therefrom were sufficient to support his finding that L & S was the sole employer of Addison under the rules of law above stated. We may add that the evidence as to the general employer's power of control in the instant case seems as strong as that in *Baltimore Transit Co. v. State, etc., Maryland Casualty Co. v. Sause,* or *Malisfski v. Indemnity Ins. Co.,* all cited above.

The order appealed from must be affirmed.

*Order affirmed, with costs.*