Edward KELLY

v.

ECLIPSE MOTOR LINE, an Ohio Corporation, Wilson Freight Company (Formerly Wilson Freight Forwarding Co.), an Ohio Corporation.

Civ. No. 17757.

United States District Court
D. Maryland.

Sept. 30, 1969.

Bertram M. Goldstein, Baltimore, Md., for plaintiff.

Herbert F. Murray, Baltimore, Md., for defendant Eclipse Motor Line.

Thomas G. Andrew, Baltimore, Md., for defendant Wilson Freight Co.

FRANK A. KAUFMAN, District Judge.

Edward Kelly, a citizen of Pennsylvania, seeks to recover damages for injuries allegedly sustained on October 25, 1963. Kelly contends that the accident in which he was injured occurred because a "binder" broke while he was fastening a load of bricks. Originally named as defendants were (1) Hugh Otanic, the owner of the tractor Kelly was driving; (2) Eclipse Motor Line, a West Virginia corporation with its principal place of business in Ohio; (3) Wilson Freight Company, an Ohio corporation with its principal place of business in Ohio; (4) Canton Manufacturing Co., an Ohio corporation, the manufacturer of the binder; and (5) Jalco Truck Products Co., Inc., an Ohio corporation, the seller of the binder. Canton's and Jalco's respective motions to dismiss have previously been granted.[1] Otanic has been dropped as a party defendant upon motion of the plaintiff.[2] Thus, at this time, the only parties before this Court are the plaintiff, Kelly, and two of the original defendants, Eclipse and Wilson.

Eclipse seeks summary judgment, contending that Kelly is barred by the Pennsylvania Workmen's Compensation Act (Pa.Stat.Ann. tit. 77, § 1 et seq.) from maintaining this suit against Eclipse. Wilson has also moved for summary judgment on the ground that since Kelly could have elected a remedy against Wilson under the Maryland Workmen's Compensation Act, Md.Ann.Code art. 101 (1964 Repl.Vol.), he is barred from maintaining this suit against Wilson.

1. Canton and Jalco successfully contended that they were not properly served in this case, and Judge Alexander Harvey, II of this Court granted their respective motions to dismiss.

2. This suit was commenced one day before the limitations period expired. Nevertheless, this Court permitted plaintiff, by motion filed two days after this suit was instituted, to amend the complaint to eliminate Otanic as a defendant in order to prevent his presence from destroying diversity of citizenship. See 3 Moore, Federal Practice § 15.09, p. 947, and cases cited therein.

Kelly has moved for partial summary judgment against Eclipse, contending that he was not an employee of Eclipse at the time of the accident. Kelly has also moved for partial summary judgment against Wilson, contending that he was neither an employee of Wilson, nor an employee of a subcontractor of Wilson, at the time of his accident.

The following relevant facts are undisputed except to the extent otherwise indicated in this opinion:

(1) On July 9, 1962, an agreement was entered into between Eclipse, a common carrier, and Otanic under which Otanic agreed to lease to Eclipse a tractor owned by him. The lease, by its terms, was to continue until cancellation by either of the parties. Pursuant to it, Otanic was obligated to furnish a driver and to provide the required fuel and maintenance, all at Otanic's sole expense. Eclipse undertook to pay to Otanic 60% of the gross revenue earned by it from the use of the tractor, minus any payroll deductions required to be withheld from the driver's salary, said deductions to be remitted to the appropriate governmental bodies.[3] The lease further stated that the tractor would operate under Eclipse's exclusive control,[4] but that "[a]ll drivers, however, furnished by the Lessor shall be deemed employees of the Lessor." The July 9, 1962 lease between Eclipse and Otanic covering the tractor was not signed by Otanic himself, but by Kelly as Otanic's agent.

(2) From July, 1962 until the time of the accident, i. e., almost 22 months, Kelly regularly drove the tractor covered by the aforesaid lease. During that period, Eclipse paid Kelly's salary directly to him after first making all appropriate payroll deductions, including, for example, Social Security and withholding taxes. Eclipse deducted the amounts which it paid Kelly and which it withheld, from the 60% of gross revenue it remitted to Otanic. Each day, Kelly would either call the Eclipse terminal, or the Eclipse dispatcher would call Kelly, and the dispatcher would give Kelly his instructions. According to Kelly, he always checked with Otanic to get Otanic's approval for each trip. The Secretary-Treasurer of Eclipse testified in a hearing in this Court that a person like Kelly would continue to drive a vehicle owned or under the control of Eclipse as long as his performance was satisfactory to Eclipse, but that Eclipse could, and in some cases did, dismiss drivers who violated company rules. However, it was Otanic's responsibility to provide a driver, and, when Kelly was injured in October, 1963 and was not able to drive, it was Otanic who provided a substitute driver for Otanic's tractor.

(3) At the time of the accident in 1963 and at the time of the institution of this suit, both Eclipse and Wilson conducted business in Maryland. Also in 1963, they each provided workmen's compensation coverage in Pennsylvania for their respective employees pursuant to Pa.Stat. Ann. tit. 77, § 1 et seq. Additionally, Wilson provided workmen's compensation coverage for its employees in Maryland. And Eclipse carried similar insurance in Ohio. Shortly after the accident, on December 31, 1963, Eclipse submitted an Employer's Report of Industrial Injury[5]

3. Eclipse, at the time of the accident, owned a few tractors of its own. Drivers of those Eclipse-owned tractors were paid on an hourly basis.

4. The provision in the lease stating that the leased vehicle would be in Eclipse's exclusive possession and control was, according to counsel for Kelly, required by I.C.C. Regulations, CFR Title 49, Part 307.4(a) (4) (now CFR Title 49 § 1057.4(a) (4)). That regulation, as in effect in 1962 and 1963, provided that

authorized carriers (such as Eclipse) might perform authorized transportation using equipment which they did not own only if, *inter alia*, the lease provided for the exclusive possession, control and use of the equipment, and for complete assumption of responsibility in respect thereto, by the lessee for the duration of the lease.

5. That report, filed by the Secretary-Treasurer of Eclipse, listed, under Injured Employee, Kelly's name, and under

to the Commonwealth of Pennsylvania Department of Labor and Industry. Subsequent to that report, an Agreement for Compensation for Disability or Permanent Injury was entered into by Kelly and Eclipse. That agreement was signed by Kelly as an employee of Eclipse and provided for the employer, Eclipse, to pay Kelly $47.50 per week under the terms of the Pennsylvania Workmen's Compensation Act.[6] Kelly has been receiving benefits under that agreement since 1963.

(4) On October 24, 1963, the day before the accident, Kelly, on orders from Eclipse, transported a load of machinery from Yorkville, Ohio to The Crown Cork and Seal Co., in Baltimore, Maryland, using Otanic's tractor and hauling a trailer owned by Eclipse. After the machinery was unloaded during the morning of the 25th, Kelly went to a diner for breakfast. After making a one-way trip, it was his practice to call Eclipse to find out if Eclipse had a return-trip cargo for him. On the 25th, the day of the accident, Kelly called Eclipse and learned that Eclipse had no return-trip cargo for him. Under those circumstances, it was Kelly's practice to attempt to obtain a return-trip cargo by calling other carriers. He did this on October 25th and obtained a job from Wilson to carry a load of bricks from the Harbinson-Walker brickyards in Baltimore to Lorraine, Ohio.[7] Kelly then drove Otanic's tractor and Eclipse's trailer to those brickyards, and the bricks were loaded on the trailer. After Kelly moved the tractor-trailer a short distance to permit another truck to be loaded, he attempted to fasten some chains over the load of bricks on the Eclipse trailer. At that instance, Kelly alleges herein that a "binder" broke, causing him to fall and to sustain injuries.

(5) When Kelly was successful in obtaining a return-trip cargo from another carrier, such as Wilson, the practice was for him to enter into a sublease from Eclipse and Otanic to the second carrier. An officer of Eclipse testified that that procedure was required by I.C.C. regulations. Thus, Kelly should have signed such a lease with Wilson as an agent of and on behalf of Eclipse and Otanic. However, no such lease was signed prior to the accident. Such a lease was signed by Kelly's replacement and by Wilson after the accident, on the standard form of lease, providing for the execution of the arrangement which had been contemplated by Kelly and reciting that Wilson

the heading, Cause of Accident, reported in substance that the accident occurred "[a]fter [Kelly was] securing load on trailer, was in act of tying down chain not in use; stepped backward, lost balance and fell off trailer to the ground," that the machine was not defective in any way, and that the accident could not have been prevented. The injury was described as a broken bone in thigh of right leg.

6. In connection with the fact that application was made for workmen's compensation benefits for Kelly under the Pennsylvania Act it is noted that while Kelly worked out of an Eclipse terminal in Bridgeport, Ohio, he lived in Pennsylvania and did approximately 75% of his driving within Pennsylvania, and that Eclipse did business in Pennsylvania, had a terminal in Pennsylvania and was a Pennsylvania employer.

7. After obtaining such a job, it was Kelly's obligation to check back with Eclipse for

approval. This was required by I.C.C. regulations and by "the book," but the rule evidently was frequently violated. There is no evidence as to whether Kelly did, in fact, obtain on October 25, 1963 the approval of Eclipse before accepting the job from Wilson. Furthermore, any time there was a lease from one carrier to a second carrier of equipment owned by a third party, I.C.C. regulations required the second carrier to assume full responsibility for the operation of the equipment. Those regulations also required that the power unit (the tractor) be identified by a display on both sides of the tractor, showing the name of the operating carrier. 49 CFR § 307.4(d) (in effect in 1963, now 49 CFR § 1057.4(d)). Thus, when Kelly began to carry a load for Wilson, the Eclipse identification should have been removed and the Wilson identification displayed. It is not clear in this case whether Kelly in fact made that change on October 25, 1963.

would pay to Eclipse, as rental for the tractor and trailer, 72% of the gross freight received by Wilson from Harbinson-Walker, that Wilson would have exclusive possession, control, use and responsibility of and for the equipment, and that Eclipse and Otanic warranted that the driver furnished would comply with all safety laws and cooperate with Wilson in so doing by filing with Wilson all log sheets and other required documents. Eclipse and Otanic also warranted in the lease to hold Wilson harmless from any loss arising while the driver would be operating the equipment in variance with Wilson's instructions or government regulations. The lease agreement also stated that the relationship between the parties would be that of independent contractors and that the employees of Eclipse and Otanic would not become the employees of Wilson, or vice versa.

(6) Pursuant to the customary practice, Eclipse kept 12% of the total freight charges paid to Wilson by Wilson's customer, Harbinson-Walker brickyards, and sent to Otanic the remainder of what Wilson paid to it. Otanic kept as rental 40% of what Harbinson-Walker paid to Wilson, and paid to the driver as salary 20% of the total the brickyards paid to Wilson.[7a] When Kelly had previously made return trips like the one he undertook on October 25th, no deductions were made by either Eclipse or Otanic from his salary. Such payments were reported by him on his federal income tax return as other income.

(7) After institution of this suit, Wilson propounded interrogatories to Kelly, the second of which asked: "2. By whom were you employed and what were your duties and wages at the time of the occurrence?" Kelly answered in a statement signed by two of his attorneys and sworn to by Kelly: "2. Eclipse Motors Lines, truck driver. Wages were 20% of gross load which averaged about $106 a week."

## ISSUES RE WILSON

Wilson contends that it complied with the workmen's compensation laws of both Maryland and Pennsylvania, that Kelly could have obtained an award for compensation under either compensation law, and that either under the law of Maryland, which Wilson contends is applicable, or under the law of Pennsylvania, Wilson is immune from Kelly's within tort suit. This is true, argues Wilson, whether Kelly is considered a direct employee of Wilson or a statutory employee[8] because Otanic and/or Eclipse agreed with Wilson to perform, on a subcontract basis, certain of Wilson's undertakings to Harbinson-Walker.

Under Maryland law, if Kelly is either a direct employee of Wilson, or if Kelly is the employee of one or more persons who accepted a subcontract from Wilson, he is barred from pressing this suit. Watson v. Chemical Leaman Tank Lines, Inc., 260 F.Supp. 847 (D.Md.

---

**7a.** Thus, Wilson ended up with 28% of what Wilson received from Harbinson-Walker, Eclipse 12%, Otanic 40% and the driver 20%.

**8.** Md.Ann.Code art. 101, § 15 provides that the liability of an employer who provides coverage under the Act "shall be exclusive," subject to certain special conditions set forth therein which have no applicability in this case.
Md.Ann.Code art. 101, § 63, provides, in part:
When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this Article which he would have been liable to pay if that workman had been immediately employed by him; * * *.
For a discussion of the policy underlying section 62, see Palumbo v. Nello L. Teer Co., 240 F.Supp. 226, 230 (D.Md.1965).

1966). Kelly claims, however, that he was either (1) an independent contractor and thus not the employee of anyone, or (2) he was the employee of Otanic and Otanic did not enter into a subcontract with Wilson, but was merely the seller of a service to Wilson.

This Court holds that Kelly was not himself an independent contractor. He was being paid for his labor in driving the truck, was subject to control by one or more persons in the manner and timing of his work, and was using equipment belonging to another. In contrast, an independent contractor is "one who contracts to perform a certain work for another according to his own means and methods, free from the control of his employer in all details connected with the performance of the work except as to its product or result." Snider v. Gaultney, 218 Md. 332, 336, 146 A.2d 869, 871 (1958). Cf. Marine v. Service Trucking Co., 225 Md. 315, 170 A.2d 188 (1961). Kelly was thus an employee of one or more of Otanic, Eclipse or Wilson at the time of the accident. If Kelly was an employee of Wilson at that time, then Wilson was immune from suit under Art. 101, Ann.Code of Md. § 15; and if Kelly, at that time, was an employee of Otanic, or Eclipse, or Otanic and Eclipse, or Wilson and one or both of Otanic and Eclipse, then Kelly is barred as a statutory employee from maintaining this suit, Md.Ann.Code art. 101, §§ 15 and 62, if Wilson subcontracted to Otanic and/or Eclipse its contractual obligations to Harbinson-Walker.

Kelly contends that neither Eclipse nor Otanic, or, for that matter, both of them together, was or were a subcontractor or subcontractors from Wilson because, instead of agreeing to perform the work of Wilson, Otanic and/or Eclipse merely "sold" the use of the tractor-trailer combination to Wilson for a period of time. In this connection, Kelly relies on Ryan v. Bethlehem Sparrows Point Shipyard, 209 F.2d 53 (4th Cir. 1953), and Roland v. Lloyd E. Mitchell, Inc., 221 Md. 11, 155 A.2d 691 (1959).

In *Ryan*, Carrier Corporation sold refrigeration equipment to Bethlehem. Carrier's employee, Ryan, was injured after performing installation adjustments and sued Bethlehem for negligence. Bethlehem contended that Carrier was a subcontractor and that therefore Art. 101, Ann.Code of Md. § 62 barred recovery by Ryan in a tort suit. The District Court agreed, but the Fourth Circuit held that a vendor-vendee relationship, rather than a contractor-subcontractor relationship, existed between Bethlehem and Carrier and that therefore Ryan was not a statutory employee of Bethlehem and Bethlehem was not immune from suit.

In *Mitchell*, the defendant company had contracted to perform construction work at a refinery, and in performance of its undertaking had purchased certain equipment from Hardinge Company, and installed it at the refinery. When the equipment malfunctioned after installation, Mitchell received authorization from Hardinge to hire mechanics at Hardinge's expense to repair the equipment. Roland, one of the mechanics so hired, was injured while working under the supervision of Hardinge. In Roland's suit against Mitchell, the question arose as to whether Roland was the statutory employee of Mitchell. The Maryland Court of Appeals held that the central question was whether Hardinge had obligated itself to perform Mitchell's work or whether it was merely insuring the proper operation of equipment sold to Mitchell. The Court, concluding that the record did not incontrovertibly establish that Hardinge was a subcontractor of Mitchell, reversed the grant of summary judgment by the trial court which had held Mitchell, as a statutory employee, immune to a tort suit by Roland.

In *Watson, supra*, the plaintiff was employed by Asbury. Asbury entered into a contract with Chemical, a common carrier, pursuant to which Asbury agreed to supply certain tractors and drivers to be used by Chemical to perform a contract to haul cement which Chemical had entered into with a third

party. Plaintiff was injured while a tractor was being unloaded. Judge Alexander Harvey, II of this Court held that the plaintiff was a statutory employee of Chemical under Art. 101, Ann.Code of Md. § 62 and was therefore barred from maintaining a negligence action against Chemical.

Kelly argues that *Watson* is distinguishable from Kelly's situation because, in *Watson*, the Court assumed that Asbury obligated himself to perform Chemical's obligation to haul cement. Therefore, Kelly maintains, the *Watson* case involved a classic subcontracting situation in contrast to Wilson merely leasing equipment in this case.

However, this Court finds nothing in the *Watson* decision that indicates that the "contract" between Asbury and Chemical was anything more or less than a lease of equipment with a driver to enable Chemical to perform a job it had undertaken. Similarly, the lease to Wilson was a lease of equipment with a driver to enable Wilson to perform a job it had undertaken. It should be noted—though this is not controlling—that the lease form itself provided that the parties were to be considered independent contractors.

█ Accepting the distinction between a contractor-subcontractor relationship and a vendor-vendee relationship as outlined in the *Ryan, Mitchell* and *Watson* cases, this Court concludes that the arrangement between Wilson on the one hand and Otanic and Eclipse on the other hand was subcontractual in nature. As noted, the form agreement stated that it was creating a contractual relationship. The payment was a percentage of the freight charges. Wilson did not undertake to purchase a truck for a period of time, but only to pay another carrier to do a job it had undertaken and to share its profit with the other carrier. Under the agreement, if the driver violated Wilson's instructions or government regulations, it was Eclipse who would bear any resulting loss. The fact that it was not Wilson, but Otanic and Eclipse who were liable for maintenance, fuel and the driver's salary is indicative of a subcontractual relationship. For these reasons, this Court concludes that if, at the time of the accident, Kelly was an employee of either or both of Otanic and Eclipse, he was an employee at that time of a subcontractor from Wilson. Therefore, under Art. 101, Ann.Code of Md. §§ 15 and 62, Wilson is immune from tort liability to Kelly, and Kelly is barred from recovery herein against Wilson. That result obtains whether Kelly, at the time of the accident, was an employee of one or two or all of Wilson, Eclipse and Otanic. In this connection, this Court holds only that Kelly was not acting as an independent contractor at the time of the accident but was at that time an employee of one or two or all of Otanic, Eclipse or Wilson. For reasons discussed *supra*, this Court does not herein decide who was Kelly's employer when the accident occurred. But for the reasons discussed *infra*, this Court hereby denies Kelly's motion for partial summary judgment against Wilson and hereby grants Wilson's motion for summary judgment against Kelly.

### ISSUES RE ECLIPSE

As stated *supra*, the within grant of summary judgment in favor of Wilson in no way depends upon which of Otanic, Eclipse or Wilson was the employer of Kelly when he was injured. But that issue does again arise in connection with Eclipse's motion for summary judgment against Kelly and Kelly's opposing partial summary judgment motion, and thus requires further consideration herein.

Initially, there is a question as to whether Maryland or Pennsylvania law determines who was Kelly's employer at the time of the accident. In general, Maryland applies the lex loci delicti in tort suits, rather than the points of contact test which might suggest the applicability in this case of Maryland rather than Pennsylvania law. Earl v. Anchor Pontiac Buick, Inc., 246 Md. 653, 229 A.2d 412 (1967). However, it seemingly makes no difference whether Maryland or Pennsylvania law is applied to deter-

mine Kelly's employment status, since both states follow the common law, master-servant test, i. e., whether the alleged employer had the right to exert control over the performance and the manner of performance of the alleged employee's duties. *See* Marine v. Service Trucking Co., 225 Md. 315, 319, 170 A.2d 188 (1961), and cases cited therein; Diehl v. Keystone Alloys Company, 398 Pa. 56, 156 A.2d 818, 820 (1959); Rugh v. Keystone-Lawrence Transfer & Storage Co., 197 Pa.Super. 526, 179 A.2d 242, 245 (1962).

Eclipse stresses the length of time Kelly drove for it, its withholding of taxes from Kelly's salary, its provision of workmen's compensation insurance coverage for Kelly, the orders its dispatcher issued to Kelly as to where and when to pick up and deliver a load, its power to remove Kelly if he violated its regulations, its ownership of the trailer, and the provision in the tractor lease between Otanic and Eclipse which provided that the vehicle would be "exclusively under the control" of Eclipse. On the other hand, Kelly emphasizes the provision in the lease between Otanic and Eclipse, that all drivers furnished by Otanic "shall be deemed employees of Otanic." Kelly also contends that only Otanic could discharge him and substitute someone else. While it poses no estoppel and is simply an expression of opinion concerning a question which this Court itself must answer, it is noted that, in a sworn answer to an interrogatory posed to him in this case, Kelly stated that he was an employee of Eclipse at the time he was injured.

Maryland cases involving the employment status of an operator of rented equipment present a considerable variety of results. In several, the owner of the equipment has been held the employer of the operator. L & S Construction Co., Inc. v. State Accident Fund, 221 Md. 51, 155 A.2d 653 (1959); Baltimore Transit Co. v. State, 184 Md. 250, 40 A.2d 678 (1945); and cases discussed in those two opinions. *See also* Restatement 2nd, Agency § 227, Comment b (1958).

■ The undisputed facts of this case establish that under the applicable principles of law, Kelly was an employee of Eclipse during the trip to Baltimore. But whether Eclipse had, in the words of Judge Prescott in Keitz v. National Paving and Contracting Co., 214 Md. 479, 491, 134 A.2d 296, 301 (1957), "the right to control and direct [Kelly] * * * in the performance of his work and in the manner in which the work is to be done" (emphasis deleted) during the period which started when Kelly arrived at the Harbinson-Walker brickyards, is in dispute. Eclipse says "Yes"; Kelly, "No." The record in this case shows no agreement on that factual issue, and reveals that a factual question remains for the jury which cannot be resolved in the summary judgment posture in which this case currently rests. Thus, the determination of Kelly's employment status when he was injured is not ripe for disposition at this time.

However, Eclipse contends that there is an independent affirmative defense which it has interposed, concerning which there is no factual dispute, and which entitles it to summary judgment herein. That defense is bottomed upon Kelly's alleged inability to assert at this time that he was not an employee of Eclipse after he has sought, received and accepted benefits under the Pennsylvania Workmen's Compensation Act. (Pa.Stat. Ann. tit. 77, § 1 et seq.). An examination of Pennsylvania statutory and case law discloses the correctness of that contention on the part of Eclipse.

The Pennsylvania statute expressly provides that an agreement, such as the one Kelly and Eclipse entered into, is "valid and binding unless modified or set aside as hereinafter provided"[9] in a

---

9. Pa.Stat.Ann. tit. 77, § 731 provides in part:

On or after the seventh day after any accident shall have occurred, the employer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; * * *.

proceeding before a review board[10] which is granted the right to modify or set aside such an agreement "if it be proved that the agreement was in any material respect incorrect."[11] Unless that statutory method of attack is followed, the statute provides that the agreement is binding. "The statutory remedy is exclusive."[12] Richardson v. Walsh Construction Co., 334 F.2d 334, 338 (3d Cir. 1964). In the absence of fraud, which the courts have read in as an exception, the agreement cannot be challenged in an independent court proceeding by-passing the statutory channel of attack. *See* the opinions of the Supreme Court of Pennsylvania in Iacoponi v. Plisko, 412 Pa. 576, 195 A.2d 362, 363 (1963), and 419 Pa. 398, 214 A.2d 504 (1965); Delaney v. Philadelphia Coal and Iron Co., 272 Pa. 578, 116 A. 537 (1922); and the opinions of the federal courts in Pennsylvania in Iacaponi [sic] v. New Amsterdam Casualty Co., 258 F. Supp. 880 (W.D.Pa.1966), aff'd per curiam, 379 F.2d 311 (3d Cir. 1967); Flaherty v. United Engineers & Constructors, Inc., 213 F.Supp. 835 (E.D.Pa. 1961); and Watkins v. National Electric

Products Corp., 69 F.Supp. 596 (W.D.Pa. 1947), aff'd, 165 F.2d 980 (3d Cir. 1948). *But see* Matonti v. Research-Cottrell, Inc., 202 F.Supp. 527 (E.D.Pa.1962).

In Iacoponi v. Plisko, 412 Pa. 576, 195 A.2d 363 (1963), the plaintiff, who had suffered a serious accident in 1955 during the demolition of a coal tipple, contended that at the time of the accident he was working as an independent contractor while the defendant took the position that the plaintiff had been an employee and was estopped from initiating a negligence action against the defendant because the plaintiff had received compensation under the Pennsylvania statute for his injuries under an agreement with regard thereto. The plaintiff alleged the defendant had obtained that agreement by fraud. The Supreme Court of Pennsylvania held that if the workmen's compensation agreement was obtained by fraud, it would have no effect, stating:

> If the agreement here involved was actually obtained, as the plaintiff claims, through fraud, it, of course, has no binding effect on the plaintiff, even though, under the particular and

11. Pa.Stat.Ann. tit. 77, § 771 provides in part:
    * * * The board, or a referee designated by the board, may, at any time, review and modify or set aside an original or supplemental agreement, upon petition filed by either party with the board or in the course of the proceedings under any petition pending before such board or referee, if it be proved that such agreement was in any material respect incorrect.

12. Pa.Stat.Ann. tit. 77, § 481 provides:
    Such agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as provided, in article three of this act. Such agreement shall bind the employer and his personal representatives, and the employe, his or her wife or husband, widow or widower, next of kin, and other dependents.

All agreements made in accordance with the provisions of this section shall be in writing, and signed by all parties in interest.

All agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination thereof, and all receipts executed by any injured employe of whatever age, or by any dependent to whom compensation is payable under section three hundred and seven, and who has attained the age of sixteen years, shall be valid and binding unless modified or set aside as hereinafter provided.

10. Pa.Stat.Ann. tit. 77, § 751 provides in part:

If, after any accident, the employer and the employe or his dependent, concerned in any accident, shall fail to agree upon the facts thereof and the compensation due under this act, the employe or his dependents may present a claim for compensation to the board.

extraordinary circumstances of this case, he has been receiving payments thereunder. [*Iacoponi, supra* 195 A.2d at 364.]

In his opinion, Justice Musmanno seemingly assumed that, in absence of fraud, the agreement would not have been open to challenge by the plaintiff, but because of the unresolved factual issue of fraud, he remanded the case for further proceedings below. On remand, the trial court concluded that there was no evidence of fraud and no clear evidence to support the contention that plaintiff was an independent contractor. The Supreme Court of Pennsylvania, on appeal, affirmed. Iacoponi v. Plisko, 419 Pa. 398, 214 A.2d 504 (1965).

In Iacaponi [sic] v. New Amsterdam Casualty Co., 258 F.Supp. 880 (W.D.Pa. 1966), aff'd, 379 F.2d 311 (3d Cir. 1967), the claimant, in a subsequent proceeding, alleged that the insurance carrier fraudulently procured his signature upon the compensation agreement. That case was instituted by Iacoponi after both opinions of the Supreme Court of Pennsylvania had been filed in Iacoponi v. Plisko, *supra*. The Federal District Court sustained the defense of res judicata, and in so doing wrote:

The exclusive remedy for plaintiff's action is under the Workmen's Compensation Act of Pennsylvania. 77 P.S. § 1 et seq. A Compensation Agreement under the Act is a stipulation between the parties of the existence of the employer-employee relationship. Fehr v. Y. M. C. A., Pottsville, 201 Pa.Super. 107, 192 A.2d 143 (1963). It is valid and binding on the parties unless set aside or modified in accordance with the procedure provided in the statute (77 P.S. §§ 731, 771). See Richardson v. Walsh Construction Co., 334 F.2d 334 (3rd Cir. 1964). The plaintiff, having signed the agreement, took no action under the statute to modify or set aside the agreement. The statute provides for appeal from the administrative determinations of the Workmen's Compensation Board to the court. * * *

[A]nd we further find that the procedure under the Workmen's Compensation Act of Pennsylvania is the exclusive remedy for the cause of action pleaded here. [Iacaponi [sic] v. New Amsterdam Casualty Co., *supra* 258 F. Supp. at 884.]

In Flaherty v. United Engineers & Constructors, Inc., *supra*, the plaintiff, undisputedly a statutory employee of the defendant, was injured in Pennsylvania by a falling boom, and filed for and received Pennsylvania workmen's compensation benefits. He also instituted a negligence suit in the United States District Court for the Eastern District of Pennsylvania. After the case was commenced, the Supreme Court of Pennsylvania held, in another case, that the definition in the Pennsylvania compensation statute of injury by accident in the course of employment specifically excluded an assault and attack by a third person upon an employee because of personal animosity. Dolan v. Linton's Lunch, 397 Pa. 114, 152 A.2d 887 (1959). Eighteen months after the *Dolan* decision, Flaherty amended his complaint against the employer to allege he was intentionally and purposely injured by the boom operator. The Court said:

United also contends that because Flaherty has accepted compensation he is estopped from now claiming damages. It is true that Section 303 of the Workmen's Compensation Act, 77 P.S. § 481, provides that acceptance of compensation shall operate as a surrender by the parties of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment other than as provided in Article III of the Act. But Section 301(c), as amended, 77 P.S. § 411, included in Article III, according to the Dolan decision specifically excludes injuries resulting from personal animosity. It would follow therefore that Flaherty may be able to collect damages from United if he can prove that his injuries resulted from the personal animosity of Osterberger. He is not

estopped to proceed with his suit on this ground. [*Flaherty, supra* 213 F. Supp. at 838.]

The *Flaherty* case is obviously not applicable herein. The type of injury complained of by Kelly is covered by the Pennsylvania Workmen's Compensation Act.

In Matonti v. Research-Cottrell, Inc., *supra,* in which "the pivotal issue" was whether the plaintiff was an employee of defendant "and thereby relegated to his rights under the Pennsylvania Workmen's Compensation Act" (202 F.Supp. at 532), the plaintiff had entered into a workmen's compensation agreement with the defendant pursuant to section 731 of the Workmen's Compensation Act. The Court held that the agreement was prima facie evidence of a compensable accident, but noted that the agreement is not res judicata between the parties on the issue of an employment relationship. The Court, in granting the defendant a new trial, said:

> Does section 771 provide the exclusive remedy for challenging a Compensation Agreement? We think not. Section 771 seems to authorize an exclusive procedure where the issue is one of decrease in disability, error in original amount of compensation, etc. * * * However, where there was no basis for entering into the agreement initially and the ultimate determination of the parties' rights must depend on an adjudication by a court of law, the same considerations do not apply. It seems impractical to compel two proceedings to decide one issue. Where the attack against the agreement is jurisdictional, as it is in the case before us, the matter may be raised collaterally. However, the fact that plaintiff is permitted in a federal court to question the jurisdiction of the Workmen's Compensation Board to approve the agreement in no way minimizes his burden to prove that jurisdiction was lacking. [*Matonti, supra* at 539.]

In a subsequent case, Judge Smith wrote for the Third Circuit:

> A compensation agreement, to come within the purview of the Act, must be "in writing, and signed by all parties in interest." 77 P.S.Pa. § 731, * *. The very purpose of the statutory requirements is to protect the employee. The agreement is tantamount to a stipulation of the facts therein recited, including the fact of the employer-employee relationship between the parties whose signatures are thereto affixed. * * * An agreement which meets the statutory requirements, as the one here in question does, is valid and binding on the parties unless set aside or modified in the manner provided by statute. 77 P.S.Pa. §§ 731, 771. [Richardson v. Walsh Construction Company, *supra* 334 F.2d at 337; citations omitted.]

Judge Smith's analysis of the statute is consistent with the holdings of the Supreme Court of Pennsylvania in Iacoponi v. Plisko, *supra* and Delaney v. Philadelphia Coal and Iron Co., *supra.* In this connection, it is to be noted that all of the opinions in *Iacoponi* by both the state and federal courts were filed after the date of the *Matonti* opinion, and that the decision in *Matonti* was not appealed. Nor has the opinion in that case been cited by any court in any subsequent case except in the dissenting opinion in Mazer v. Lipshutz, 327 F.2d 42, 55 (3d Cir. 1963), and then for another point entirely.

▆ Kelly seeks herein to establish *de novo* that he was an independent contractor and not an employee. However, a plaintiff such as Kelly is not permitted to run a horse and wagon through the provisions of the Pennsylvania law and to upset an agreement thereunder by raising *de novo* in a tort proceeding the question of whether he was an employee or an independent contractor, and by contending in a tort case that he entered into the compensation agreement because of a mistaken assumption on his part that he was an employee. In this connection, the record discloses that Kelly has made no allegations of fraud or even of facts suggesting fraud, which, if estab-

lished, would require that the compensation agreement be vitiated.

■ Kelly also contends that he is entitled in this proceeding to produce evidence to establish that, even if he was an employee, he was not an employee within the coverage of the Pennsylvania workmen's compensation law. Section 1 of the Pennsylvania statute states in pertinent part:

This act * * * shall not apply to any accident occurring outside of the Commonwealth, * * * except accidents occurring to employes whose duties require them to go temporarily beyond the territorial limits of the Commonwealth, not over six months when such employes are performing services for employers whose place of business is within the Commonwealth. [Pa. Stat.Ann. tit. 77, § 1 (as amended, 1956).]

It is Kelly's position that the current state of the record in this case reveals a factual dispute with regard to whether he was a Pennsylvania employee and whether Eclipse was a Pennsylvania employer, within the terms of the statute. The record would not, however, appear to disclose any such factual dispute, and indeed would seem to require a determination, in a summary judgment context, that Kelly is such a Pennsylvania employee and Eclipse such a Pennsylvania employer.[12a] However, even if this Court were to accept the contention that such a factual dispute exists, Kelly has not cited, nor has this Court found, any Pennsylvania case in which a party has been permitted to raise the aforementioned coverage issue in a tort action and thus to by-pass the procedures provided by sections 731, 751 and 771 of the Pennsylvania law.[13] The same policies which militate against permitting Kelly to challenge *de novo* whether he was an employee of Eclipse at the time of the accident apply in connection with his contention that he should have the right to establish herein that he is not covered by the Pennsylvania statute.

■ The question remains as to whether a Maryland court would apply the Pennsylvania statutory bar to Kelly's within suit. Section 67(3) of the Maryland statute provides that under certain conditions, if a sister state's statute extends reciprocal extraterritorial effect to the Maryland compensation law, Maryland will apply the statute of that state instead of its own law.[14] Pennsylvania

---

12a. *See* n. 6 *supra.*

13. Plaintiff cites Brown v. Ross Motor Lines, 177 Pa.Super. 369, 110 A.2d 839 (1955). However, that case merely involved an instance in which a plaintiff followed the statutory route. In *Brown*, there was a factual dispute as to coverage under section 1 which was resolved in the context of statutory procedures, i. e., the claimant filed for benefits with the Pennsylvania compensation board. The Referee disallowed the claim on the ground that the employee was covered by the terms of the statute. The claimant appealed to the Board which found the employee to be within the statute and awarded benefits. The employer then appealed the Board's grant to a Pennsylvania state court which found that the Board's finding was not supported by the evidence and reversed. On appeal, the lower court's finding of no coverage under section 1 was affirmed. *See also* Di Simone v. Beam's Attractions, 182 Pa. Super. 274, 126 A.2d 799 (1956); Kutt

v. Beaumont Birch Co., 177 Pa.Super. 352, 110 A.2d 816 (1955); Koeppel v. Royal Clothing Co., 150 Pa.Super. 610, 29 A.2d 241 (1943); Stewart v. Thomas Earle & Sons, 150 Pa.Super. 591, 29 A.2d 239 (1943).

14. Md.Ann.Code Art. 101, § 68(3) (1964 Repl.Vol.) provides in part:

An employee and his employer who are not residents of this State and whose contract of hire is entered into in another State shall be exempted from the provisions of this Article while such employee is temporarily or intermittently within this State doing work for such nonresident employer, if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of such other State, so as to cover such employee's employment while in this State; provided the extraterritorial provisions of this Article are recognized in such other State and provided em-

does not exempt Maryland-covered employees from the application of the Pennsylvania act. Thus, a Maryland court is not *compelled* by section 67(3) to require a person such as Kelly, after he is injured in Maryland, to look to the Pennsylvania statute. But nothing in section 67(3) would seem to *prevent* a Maryland court from applying the bar of any sister jurisdiction, whether or not it meets that section's reciprocity test, particularly after the claimant has accepted compensation under the law of that sister state. And similarly, although the full faith and credit clause of the federal Constitution (Art. 4, § 1) would not appear to require Maryland to recognize the statutory bar of a sister state whose public policy considerations differed from Maryland's policy (*see* Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Restatement, 2d, Conflict of Laws § 403(a), Comment on Tentative Draft No. 9 (1964)), there is no constitutional impediment which would hinder a Maryland court from respecting a statutory bar in a case such as this.

In Carroll v. Lanza, *supra*, a common law action in Arkansas was permitted because Arkansas had sufficient interest as the place of injury to provide common law damages even though (1) Missouri was the place of residence of the plaintiff and the place at which the employment contract was entered into, (2) Missouri had provided that its Workmen's Compensation Act was to be the exclusive remedy, and (3) the employee had accepted Missouri benefits. However, in the *Carroll* case, Arkansas felt that in the absence of any similar statutory bar enacted by its own legislature, its own public policy requirements dictated that the Missouri bar not be imposed. In Kelly's situation, the laws of Maryland and Pennsylvania are based on similar policy considerations, even though they provide different procedural mechanisms. Both establish statutory bars to tort suits by covered employees against their insurance-providing employers, subject only to certain conditions not applicable herein.[15]

As far as this Court is informed, the issue of whether Maryland will apply such a bar has arisen only once in a Maryland court and in that case the court refused to allow an employee to proceed under the Maryland act after that employee had received a final and binding workmen's compensation award from another state. Hulliken v. S. A. La Porte, Inc. and Liberty Mutual Insurance Company, Law No. 23,383, unpublished Opinion and Order dated No. 18, 1964 by Judge Bowie of Circuit Court

ployers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation act or similar laws of such other State. The benefits under the Workmen's Compensation Act or similar laws of such other State shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this State.

15. The Pennsylvania and Maryland workmen's compensation statutes are built upon different procedural frameworks, both of which, however, provide methods for final adjustments and for bars to tort recovery under certain conditions. *See* the discussion *supra* regarding Pennsylvania's statutory scheme. In contrast to the Pennsylvania procedure under which an employer and employee may voluntarily agree upon the compensation to be paid, the Maryland statute provides for an adjudication by the Commission before any award is made. Section 39 of the Maryland statute provides in part:

When an employee is entitled to benefits under this article, he shall file with the Commission his application and the report of his physician * * *.

Section 40 provides in part:

The Commission shall make or cause to be made such investigation of any claim as it deems necessary, and upon application of either party, shall order a hearing. Within thirty days after a claim for compensation is submitted under this section, or such hearing concluded the Commission shall make or deny an award, determining such claim for compensation, and file same in the office of the Commission.

See n. 8, *supra*, in which section 15 is discussed. That section establishes the exclusivity of the compensation route and imposes the statutory tort suit bar.

for Prince George's County (Md., a copy of which has been placed in the official court file in this case. That result comports with the general rule as stated in Restatement, Conflict of Laws, 2d, § 403 (b), Comment b (Tentative Draft No. 9, 1964):

> A state will not be deterred from granting relief under its workmen's compensation act by the fact that the employee could obtain an award for the same injury under the act of one or more other states. * * *

Suits for tort or wrongful death present different considerations. It is thought unfair that a person who has been insured against a risk under the workmen's compensation act of one state which gives him immunity from suit for tort or wrongful death should not enjoy that immunity in a suit brought in other states. Also to deny a person the immunity granted him by a workmen's compensation act of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be. All states are sympathetic with the policies underlying workmen's compensation and all states grant certain persons immunity from suit for tort or wrongful death, although the various acts do differ somewhat in matters of detail. For all of these reasons, a state will not hold a person liable for tort or wrongful death under the circumstances stated in the present rule. This is so even in a situation where the particlular defendant, as in the case of a fellow servant, owes the injured employee no obligation in workmen's compensation.

Under the rule of this Section, a defendant will be accorded immunity from tort and wrongful death liability if he is given such immunity by the workmen's compensation act of any state under which the plaintiff has already obtained an award for the injury. A person who accepts an award under the workmen's compensation act of a given state may justly be held bound by the provisions of that act insofar as immunity from tort and wrongful death liability is concerned. To the same effect, see Mooney v. Stainless, Inc., 338 F.2d 127, 130 (5th Cir. 1964); Jonathan Woodner Co. v. Mather, 93 U.S.App.D.C. 234, 210 F.2d 868, 873–874 (1954); Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958); Cf. Crider v. Zurich Ins. Co., 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965), on remand, 348 F.2d 211 (5th Cir. 1965), cert. denied, 382 U.S. 1000, 86 S.Ct. 586, 15 L.Ed.2d 487 (1966); Pacific Employers Ins. Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); Willingham v. Eastern Airlines, 199 F.2d 623 (2d Cir. 1952).

> * * * [A]lthough the local state might * * * give the affirmative benefit of its own compensation as to this employee, thereby asserting its right to apply its own statute to the exclusion of the foreign statute, it does not follow that the foreign statute will be disregarded when the employee is trying to get out of the compensation system altogether and back into the common-law damage system. In other words, the local state may reserve the right to apply its own statute in order to ensure that its *benefits* are conferred on the employee, for when it does this, no irremediable harm can possibly ensue to either of the parties. This refusal to enforce the affirmative benefits of the foreign compensation act hurts no one, for if rights exist thereunder they are now no less enforceable in the foreign state after the first award than before. But if the defenses created by the foreign state are not enforced, irremediable harm to the employer is the result. Because of this distinction, then, a foreign exclusive-remedy defense to common-law suit against the employer will usually be honored although, on the same facts, the benefits of the foreign act would be required to give way to the benefits of the local act, if the employee chose to pursue his compensation rights locally. [3 Larson, Work-

men's Compensation Law § 88.10 (1968) (footnote omitted; emphasis in original).]

This Court is of the opinion that the Maryland Court of Appeals, if and when it is faced with the question of whether a person such as Kelly can proceed in a Maryland tort suit after accepting Pennsylvania statutory compensation, would apply the Pennsylvania statutory bar. Because of that bar, this Court concludes that Eclipse is entitled to summary judgment herein against Kelly. Kelly's motion for partial summary judgment against Eclipse on the issue of whose employee he was at the time of the accident is thus rendered moot.

For the reasons set forth in this opinion, summary judgments for the defendants Wilson and Eclipse are hereby granted.