SUN CAB COMPANY ET AL. *v.* POWELL ET AL

[No. 52, October Term, 1950.]

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert E. Coughlan, Jr.*, with whom were *James J. Lindsay* and *G. Dudley Iverson* on the brief, for the appellants.

*Daniel E. Klein*, with whom was *W. Giles Parker* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the court.

This is a workmen's compensation case, in which the controversy is whether Melvin T. Powell, an automobile tire repairman, was an employee of Sun Cab Company, of Baltimore, or of Seiberling Rubber Company, of Akron, Ohio, when he sustained an accidental injury in the course of his employment.

Under an oral contract, Seiberling agreed to furnish the tires for all of the taxicabs operated by Sun Cab, provided that several men would handle the tire service on Sun Cab's premises. Applicants for employment were to be interviewed by Seiberling's territorial agent and by Sun Cab's personnel manager. Final authorization for the hiring of each tire service employee was to be approved by Seiberling's tire mileage department in Akron. It was further agreed that all wages for these employees were to be paid by Sun Cab, which would submit a monthly statement showing the amount paid for wages, and Seiberling would allow a credit for that amount. After the statement was returned with Seiberling's approval, Sun Cab would deduct the amount and remit the balance due for the tire service for the month.

On February 27, 1949, claimant was pulling a nail out of a tire with pliers, and as the nail came out the pliers slipped, and the nail struck him in the eye. On February 8, 1950, the State Industrial Accident Commission found that claimant was an employee of Seiberling, and ordered that claimant be paid compensation by Seiberling and its insurer, Royal Indemnity Company.

On appeal from that decision, three issues were submitted to a jury in the Baltimore City Court: (1) Was claimant an employee of Sun Cab? (2) Was claimant an employee of Seiberling? (3) Was claimant jointly employed by both? The jury answered "Yes" to the first issue, and "No" to the second and third issues. From the judgment entered upon the jury's verdict, reversing the decision of the Commission, the case was appealed here.

The Maryland Workmen's Compensation Act generally defines "employer" as one employing workmen in extra-hazardous employments. Code Supp. 1947, art 101, sec. 67. The words "employer" and "employee" are the outgrowth of the old terms "master" and "servant." They have been adopted by reason of the shift of the relation in general from a personal to an impersonal one, and are the terms commonly used as a better designation of the relation in the industrial age. *Kourik v. English,* 340 Mo. 367, 100 S. W. 2d 901, 905. Thus the words "employer" and "employee" in the Workmen's Compensation Act are synonymous with the words "master" and "servant," and the rules for determining the existence of the relation of employer and employee under the Act are the same as the rules at common law for determining the relation of master and servant. *Moore v. Clarke,* 171 Md. 39, 50, 187 A. 887, 107 A. L. R. 924; *Harris v. Seiavitch,* 336 Pa. 294, 9 A. 2d 375; *Cookson v. Knauff,* 157 Pa. Super. 401, 43 A. 2d 402.

It is generally stated that there are four elements to be considered in determining the question whether the relationship of master and servant exists. These elements are: (1) the selection and engagement of the

servant, (2) the payment of wages, (3) the power of dismissal, and (4) the power of control of the servant's conduct. Thus, in *Baltimore Boot & Shoe Mfg. Co. v. Jamar*, 93 Md. 404, 413, 49 A. 847, this Court said that the essential elements of the contract of master and servant are that the master shall have control and direction of the employment to which the contract relates and all of its details, and shall have the right to employ at will and to discharge for proper cause those who serve him. Also, in *Baltimore Transit Co. v. State, to Use of Schriefer*, 184 Md. 250, 271, 40 A. 2d 678, the Court said that since the right to control includes the power to discharge, the existence of the power to discharge is essential to the relationship.

In reality, the right to hire and the right to discharge are not always absolutely essential to the existence of the relationship of master and servant, although the possession of either the power to hire or the power to discharge is very strong evidence, and under some circumstances conclusive evidence, of the relationship. Actually the decisive test in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done. *Moore v. Clarke*, 171 Md. 39, 50, 187 A. 887, 107 A. L. R. 924; *Sgattone v. Mulholland & Gotwals*, 290 Pa. 341, 138 A. 855, 58 A. L. R. 1463; *Hinds v. Department of Labor & Industries*, 150 Wash. 230, 272 P. 734, 62 A. L. R. 225. We admit that it would not be impossible to make a contract giving one person the power to hire and discharge, and another person the power to control the details of the work, and in such a case the person having the power to control and direct would be the master. For example, it has been held that the mere fact that a mine owner has the right to object to the employment of workmen hired by the contractor operating the mine, whenever he anticipates that they will not conform to the general rules of the mine, does not make him their master, since

possession of this right does not tend to show that he had the right to exercise any control over their work. *Harris v. McNamara*, 97 Ala. 181, 12 So. 103. Likewise, possession of the power to discharge a workman is not conclusive in determining the existence of the relationship of master and servant, as is shown by the fact that the reservation by a contractor's employer of the power to discharge any of the servants of the contractor for incompentency or carelessness does not make them the servants of the employer. *Reedie v. London & N. W. R. Co.*, 1849, Exch. 244. But in actual practice, the master usually possesses the power to hire and the power to discharge. Generally, therefore, it is a justifiable inference of fact that the person who has the power to hire and discharge workmen is their master. Such an inference cannot be drawn in every case as a matter of law. However, it is usually, if not always, found that where these powers are mentioned as *indicia* of the relationship of master and servant, the possession of the power of control is also relied upon. *Brow v. Boston & Albany R. Co.*, 157 Mass. 399, 402, 32 N. E. 362.

First, as to the hiring of claimant, it was testified that his application for employment was filled out in the Sun Cab office on the regular form used for all Sun Cab employees. He was interviewed by Seiberling's representative, who passed upon his qualifications and recommended him to Sun Cab. His application was thereupon approved by Sun Cab's personnel manager. Of course, in order to warrant payment of compensation under the Workmen's Compensation Act, it is essential that there should have existed at the time of the injury a contract of employment between the alleged employer and the injured workman. *Parker v. Travelers' Insurance Co.*, 174 Ga. 525, 163 S. E. 159, 81 A. L. R. 472; *Bowen v. Hockley*, 4 Cir., 71 F. 2d 781, 94 A. L. R. 856; *Lind v. Nebraska National Guard*, 144 Neb. 122, 12 N. W. 2d 652, 150 A. L. R. 1449. In the instant case there was testimony that claimant was hired by Sun Cab with the approval of Sun Cab's personnel manager.

Secondly, as to payment of wages, it was testified that claimant's time records were kept by Sun Cab, that he was carried on Sun Cab's pay roll, and that his salary was paid every week by Sun Cab. It is accepted that the source of payment of wages is usually not decisive of the question whether a certain person was an employer, but it is a circumstance which may be considered by the triers of the facts, and it is entitled to weight and may sometimes determine the question. *McCoy v. Griffith,* 196 Ky. 406, 244 S. W. 871; *Industrial Commission of Ohio v. Shaner,* 127 Ohio St. 366, 188 N. E. 559; *Los Angeles County v. Industrial Accident Commission,* 123 Cal. App. 12, 11 P. 2d 434; *Stevenson v. Lake Terminal R. Co.,* 6 Cir., 42 F. 2d 357, 359.

Moreover, Sun Cab included claimant's salary in its report to Bankers Indemnity Company, its carrier of compensation insurance. Thus Sun Cab's insurer collected a premium based upon claimant's wages, whereas Seiberling's insured did not. Appellants urge that this does not prove that claimant was the employee of Sun Cab. They claim that it would not be difficult to ascertain the amounts that have been paid to Bankers Indemnity Company on account of the compensation insurance of all of the employees in the tire shop, and that Royal Indemnity Company could be reimbursed for those amounts. Of course, the fact that Sun Cab paid the premium for claimant's compensation insurance is not conclusive evidence that claimant was an employee of Sun Cab. But it tends to show the existence of the contractual relationship. We also acknowledge that it is not important that the parties believe or disbelieve that the relationship of master and servant exists, except as such belief indicates an assumption of control by the one and submission to control by the other. *Maryland Casualty Co. v. Sause,* 190 Md. 135, 57 A. 2d 801, 803. However, it is significant that Sun Cab reported claimant's accidental injury to its insurer, and it was not until afterwards, following a conference with its insurer, that it reported to the Industrial Accident Com-

mission that claimant was an employee of Seiberling.

In addition, Sun Cab withheld from claimant's wages the amount necessary to pay his Federal income tax, and paid that tax to the Collector of Internal Revenue, just as it did for their other employees. Again appellants urge that this does not prove that Sun Cab was claimant's employer. They say that it was done to avoid unnecessary bookkeeping. It was further shown that Sun Cab deducted from claimant's wages the amounts due for social security and unemployment compensation. Appellants concede that Sun Cab paid both of these, but contend that Sun Cab paid these for some additional services rendered by Seiberling.

Thirdly, there was dispute as to the power of Sun Cab to discharge claimant. A former employee in the tire shop testified that he was fired by Bertram Schiff, president of Sun Cab. Schiff testified that he could not discharge any employee in the tire shop, but admitted that he could bring about a discontinuance of his employment. He then gave this explanation: "I could tell Seiberling I didn't think he was the man for the job, and I think Seiberling would go along with me."

Fourthly, on the decisive question of the power of control, there was dispute as to who gave the instructions as to the work to be performed, the conditions under which the work was to be done, and the hours of labor. Claimant punched the time clock like all other Sun Cab employees. While Sun Cab's president would not admit that the employees in the tire shop were subject to all the rules and regulations laid down for Sun Cab's employees, nevertheless he did admit that they were subject to exactly the same rules and regulations as the other employees in so far as discipline was concerned. If, for example, he saw one of the tire shop employees intoxicated on the premises, he would notify Seiberling immediately. He added that he bought service from Seiberling, and he wanted what he paid for.

Sterling Parker, Seiberling's territorial agent, who was called as a witness for Sun Cab, and who testified

that he passed upon the qualifications of applicants for jobs in the tire shop, was asked who directed and controlled those employees. He replied: "They are subject to on-the-job direction. For instance, if our man in any operation needs to be directed, we feel that the management can direct the man, such as to change a tire or various things of that sort."

The law is firmly established that where on an appeal from a decision of the State Industrial Accident Commission, the terms and manner of employment are undisputed, the court should determine as a matter of law whether the injured workman was an employee of the alleged employer; but where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue as to the relation that existed between the parties is a mixed question of law and fact to be determined by the jury. *Williams Construction Co. v. Bohlen,* 189 Md. 576, 56 A. 2d 694, 695. The evidence in this case, much of which is disputed, is sufficient to warrant the jury in finding that claimant was an employee of Sun Cab, and not an employee of Seiberling.

The contention has also been made by appellants that the trial judge committed reversible error in his charge to the jury. In his charge the judge said: "In this case the uncontradicted testimony is that this man was insured by the Sun Cab Company's insurer and that they paid the premium for that insurance." When objection was made to the statement, the judge corrected it by saying: "That is one of the things you have to decide, whether he was insured by the Sun Cab Company's insurer. The testimony is that he was on the pay roll list of those who worked for the Sun Cab Company, which list was filed with the insurer of the Sun Cab Company, and you will have to decide whether that and other facts in the case were sufficient to make the man insured by the Sun Cab Company. You disregard what I said in the earlier part of my charge about that."

Appellants contend that the judge's first statement misled the jury, and that his correction of it added to the confusion. We find no merit in that contention. Under the rules adopted by the Court of Appeals, any party may object to any portion of any instruction given or to any omission therefrom, or to the failure to give any instruction. General Rules of Practice and Procedure, part 3, subd. 3, rule 6. The very purpose of this rule is to authorize the trial judge in an appropriate case to correct or amplify his charge. It is not error to do so where the additional instruction correctly states the law or the facts. *Fisher v. Baltimore Transit Co.*, 184 Md. 399, 41 A. 2d 297. In the case at bar the jury were entitled to consider the fact that claimant was on Sun Cab's pay roll list, which was filed with its insurer. The testimony was relevant to the issue. We see no reason to believe that the jury did not understand that two insurance companies were parties to this case, one as Sun Cab's insurer, the other as Seiberling's insurer. We can find no prejudicial error in the charge as corrected.

As the trial judge did not err in refusing to take the case from the jury, or in his charge to the jury, we will affirm the judgment reversing the order of the Commission.

*Judgment affirmed, with costs.*