# MARGARET K. LOCKERMAN *v.* PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 25, September Term, 1977.]

*Decided October 10, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*George E. Meng,* with whom were *Pitrof & Starkey* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *J. Howard Holzer, Assistant Attorney General,* on the brief, for appellees State of Maryland and State Accident Fund. *Alan E. D'Appolito, Associate County Attorney,* with whom were *James C. Chapin, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellee Prince George's County, Maryland.

DIGGES, J., delivered the opinion of the Court.

The appellant, Margaret K. Lockerman, sustained injuries as the result of an accident which occurred on April 5, 1973, while she was serving as a petit juror in the Circuit Court for Prince George's County. The sole issue before us on this appeal is whether a juror is an employee within the contemplation of the Workmen's Compensation Act, Md. Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, § 21, and hence whether Ms. Lockerman's injuries are compensable under that statute. We conclude, as did the circuit court, that the question presented must be answered in the negative.

Such of the facts as are relevant to this appeal are undisputed and may be briefly stated. The appellant, regularly employed at the time as a journeyman bindery woman by the federal government, in obedience to a summons reported to the Prince George's County courthouse in Upper Marlboro for jury duty on Monday, April 2, 1973; later in the week she fell as she was leaving the jury box and suffered injuries to her knee and back. She filed a claim with

the Workmen's Compensation Commission which, on August 1, 1975, awarded her compensation after finding, *inter alia*, that the claimant was an employee of Prince George's County at the time of the injury. Dissatisfied with this finding, the county filed its appeal to the circuit court, maintaining that the claimant as a juror was not an employee as defined by the Act, or in the alternative that if she was, she was an employee of the State of Maryland and not of the county.[1] Following a hearing, the Circuit Court for Prince George's County (Levin, J.) on February 7, 1977, reversed the Commission's order, finding that Ms. Lockerman was not an employee either of Prince George's County or of the State and was thus not entitled to compensation. The claimant noted a timely appeal to the Court of Special Appeals, and we granted certiorari prior to that court's consideration of the case. We now affirm the judgment of the circuit court.

The appellant here argues that she was an employee within the coverage of the Workmen's Compensation Act by virtue of either subsection (b) (4) or (b) (5) of section 21. The pertinent provisions of that section, in effect at the time of the accident, remain unchanged today and read:

> (b) *Coverage of employees.* — The following shall constitute employees subject to the provisions of this act ... :
>
> * * *
>
> (4) Every person in the service of any political subdivision or agency thereof, under any contract of hire, express or implied, and every official or officer thereof, whether elected or appointed, while performing his official duties....

---

1. Although all courts in Maryland, other than those that are federal, are State courts, the compensation provided jurors by statute, Md. Code (1974, 1976 Cum. Supp.), Cts. & Jud. Proc. Art., § 8-106, is by legislative mandate required to be paid by the county in which they serve. *Id.* § 8-106 (a-27). Since we conclude that jurors are not employees within the meaning of the Workmen's Compensation Act, there is of course no need to consider the question, disputed between the appellees here, which governmental entity would otherwise be regarded as their employer.

(5) Every person performing services for remuneration in the course of the trade, business, profession or occupation of an employer at the time of the injury, provided such person in relation to this service does not maintain a separate business, does not hold himself out to and render service to the public and [is] not himself an employer subject to this act. [Md. Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, § 21 (b) (4) & (5).]

For reasons which will shortly appear, we think that counsel for the appellant was not imprudent when, at oral argument before this Court, he virtually abandoned his contention that a contract of hire existed between the juror here and either Prince George's County or the State of Maryland, so as to bring Ms. Lockerman within the coverage of section 21 (b) (4), which explicitly requires such a contract.[2] The appellant, however, proceeds to present the novel argument that, although normally the employer-employee relationship is a contractual one, the legislature, by adopting section 21 (b) (5), provided coverage unlike that in any other state, and *eliminated* the necessity that there exist a contractual relationship. Assuming without deciding that section 21 (b) (5) has application to the State or its political subdivisions, we think the long-settled principle that the relation of employer and employee is contractual, *see Balto. Boot Co. v. Jamar,* 93 Md. 404, 413, 49 A. 847, 850 (1901); 9 M.L.E. *Employment; Work and Labor*

---

**2.** The appellant in her brief argues that a contract of hire was created by virtue of the fact that, although jurors in Prince George's County are normally required to work only 25 days during the six-month period for which they are selected, Ms. Lockerman, without obligation to do so, acceded to requests that she serve extra time and in fact worked a total of 65 days during the six-month period. We reject this contention. Whatever may be the custom as to "requesting" jurors to serve "extra" time, a juror could be required to serve for the entire six-month period. Even were that not so, however, we do not have the difficulty experienced by the appellant's counsel in separating "mandatory" ·from "permissive" jury days. Ms. Lockerman was injured during her first week of "mandatory" jury duty; even if there *were* a contract of hire as to the days on which she voluntarily agreed to serve as a juror, that contract. would not have come into being at the time of the appellant's injury. We think it self-evident that the employee status must have existed at the time of the injury to support coverage under the statute.

§ 2 (1961), viewed in conjunction with the underlying premise that workmen's compensation acts are designed to recompense employees for accidental injuries arising out of and in the course of their employment, 1 A. Larson, *The Law of Workmen's Compensation* § 1.10 (1972), renders such an argument manifestly absurd. The language of section 21 (b) (5) and simple common sense likewise suggest the same conclusion; hence we decline to attribute any such intention to the legislature.

Our predecessors recognized the principles we now reiterate more than a quarter-century ago, when they opined: "Of course, in order to warrant payment of compensation under the Workmen's Compensation Act, it is essential that there should have existed at the time of the injury [an express or implied] contract of employment between the alleged employer and the injured workman." *Sun Cab Co. v. Powell*, 196 Md. 572, 579, 77 A. 2d 783, 786 (1951). For that proposition the Court in *Sun Cab* did not cite the text of the statute (which as it then read, without using the term "contract" in its definition of "employee," merely described an employee as "a person who is engaged in an extra-hazardous employment in the service of an employer . . . ," *see* Law of May 6, 1941, ch. 627, § 1, 1941 Md. Laws 1079 (codified at Md. Code (1957, 1964 Repl. Vol.), Art. 101, § 67 (3)) (current version at Md. Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, §§ 67 (3) & 21)) but simply the case law of other jurisdictions. 196 Md. at 579 [786]. For other formulations of the necessity for a contract, supportive of the views expressed in *Sun Cab*, see *Hicks v. Guilford County*, 267 N. C. 364, 148 S.E.2d 240, 242-43 (1966) (statutory definition of employee phrased in terms of a contract of hire "adds nothing to the common law meaning of the term 'employee' "); *Bendler v. Bendler*, 3 N. J. 161, 69 A. 2d 302, 303 (1949) ("[i]n common usage, one cannot be an employee without a contract"); *Fisher v. City of Seattle*, 62 Wash. 2d 800, 384 P. 2d 852, 854 (1963) ("compensation law demands that, in order to find an employer-employee relation, a *mutual* agreement must exist between the employer and employee"); 81 Am.Jur.2d *Workmen's*

*Compensation* § 153, at 824 (1976) (citing cases); 99 C.J.S. *Workmen's Compensation* § 65, at 279 (1958) (citing cases). Professor Larson, in discussing the reasons for the insistence in workmen's compensation statutes on the existence of a "contract of hire, express or implied," explains:

> Compensation law . . . is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented . . . might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages. [1A A. Larson, *The Law of Workmen's Compensation* § 47.10, at 8-146 to 8-148 (1973) (footnote omitted).]

Section 21 (b) (5) itself — "[e]very person performing services for remuneration" — is couched in language that is the very essence of contract — the quid pro quo. It strains credulity to suggest that, although using quintessentially contractual language, the legislature nevertheless intended to abrogate the heart of the ordinary employer-employee relationship.[3] And if, in fact, section 21 (b) (5) eliminates the need for a contractual relationship between employer and employee, there would, for example, be no reason for the legislature to have provided specific coverage under the act for prisoners working for county entities in employments for which the county pays wages to the prisoner. Md. Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, § 35. This·

---

**3.** It was in discussing a statutory definition of "employee" which included "all natural persons who perform service for another for financial consideration" that the New Jersey Supreme Court said, "In common usage, one cannot be an employee without a contract. Employment ordinarily presupposes a contractual relation." Bendler v. Bendler, 3 N. J. 161, 69 A. 2d 302, 303 (1949).

is so because if no contractual relationship were required a prisoner would clearly be a "person performing services for remuneration." Our conclusion here is in harmony with the well-settled principle that a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless. *St. Comm'n on Human Rel. v. Baltimore,* 280 Md. 35, 42, 371 A. 2d 645, 649 (1977); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 360, 369 A. 2d 82, 86-87 (1977). It seems apparent to us that in those situations where the legislature has desired to provide coverage to persons not encompassed by the ordinary contractual relationship of employer-employee, it has done so with specificity. *E.g.,* Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, § 21 (b) (4) (volunteer fire or rescue squad or police department); *see Moats v. State,* 215 Md. 49, 53, 136 A. 2d 757, 760 (1957) (amendments extending coverage of predecessor statute "to certain groups of employees who would not otherwise be regarded as 'workmen * * * employed for wages' give rise to the strong inference that those who are neither within the ordinary meaning of that term nor specifically declared to be deemed to be included within it, are not intended to be covered").

Thus, absent specific statutory provision, the normal contractual incidents of the employer-employee relationship are required to be present in order that any person be covered under *either* subsection (b) (4) or (b) (5) of the Act. Our inquiry therefore reduces itself to whether those incidents are present in the relationship of a juror with either the State or the county, as the case may be.[4] We think

---

4. One of these incidents is the employee's compensation, and the parties have given considerable attention to the impact of what is now Md. Code (1974, 1976 Cum. Supp.), Cts. & Jud. Proc. Art., § 8-106 (a-19) relating to juror compensation. As the Revisor's Note to § 8-106, Md. Code (1974), Cts. & Jud. Proc. Art., points out:

In Prince George's, St. Mary's, Calvert, and Charles counties jurors receive expense money in lieu of compensation; this provision avoids the effect of a federal regulation which prohibits federal employees from receiving compensation, other than their salaries, and requires them to turn over any outside compensation to the federal government.

Our conclusion that a juror is not in any event an employee, of course, renders irrelevant the question whether the remuneration a juror in Prince George's County receives is "salary" or "expenses."

it clear that they are not and conclude that an injured juror is not an employee entitled to receive compensation, aligning ourselves with six of the seven jurisdictions which have decided the issue.[5] *See Board of Com'rs of Eagle County v. Evans,* 99 Colo. 83, 60 P. 2d 225 (1936); *Metropolitan Dade County v. Glassman,* 341 So. 2d 995 (Fla. 1976); *In re O'Malley's Case,* 361 Mass. 504, 281 N.E.2d 277 (1972); *Silagy v. State,* 105 N. J. Super. 507, 253 A. 2d 478 (App. Div.), *certification denied,* 54 N. J. 506 (1969); *Seward v. County of Bernalillo (District Court),* 61 N. M. 52, 294 P. 2d 625 (1956); *Hicks v. Guilford County,* 267 N. C. 364, 148 S.E.2d 240 (1966). *Contra, Industrial Commission v. Rogers,* 122 Ohio St. 134, 171 N. E. 35 (1930). See in addition the opinions in *Jochen v. County of Saginaw,* 363 Mich. 648, 110 N.W.2d 780 (1961), discussing but not deciding the issue. Our conclusion is premised on the fact that any contractual relationship involves an agreement — the voluntary concurrence of the parties in a common intent to affect their legal relations — creating an obligation. *See Post v. Gillespie,* 219 Md. 378, 384, 149 A. 2d 391, 395 (1959). It is plain that voluntary assent is wholly lacking here because a citizen summoned for jury duty simply cannot decline to appear and serve.[6]

---

5. We are aware, of course, that the Workmen's Compensation Act is to be liberally construed, Code (1957, 1964 Repl. Vol.), Art. 101, § 63; Wood v. Abell, 268 Md. 214, 220, 300 A. 2d 665, 668 (1973); Bayshore Industries v. Ziats, 232 Md. 167, 173-74, 192 A. 2d 487, 491 (1963), but we are not at liberty to disregard its clear meaning. *See* Crowner v. Balto. Butchers Ass'n, 226 Md. 606, 610, 175 A. 2d 7, 9 (1961).

6. The Supreme Court of Ohio, the only jurisdiction which has determined that a juror is within the purview of its workmen's compensation statute, suggested that it is only in theory that every person labors of his own free will — that in reality he labors for a reward; hence his inability to decline appointment as a juror is irrelevant since the consideration provided by law for the service is theoretically adequate. Industrial Commission v. Rogers, 122 Ohio St. 134, 171 N. E. 35, 37 (1930). While it may be that the fact that the Ohio court was interpreting a statutory provision covering service under an *appointment* of hire, 171 N. E. at 36, affected the result, *see* 1A A. Larson, *The Law of Workmen's Compensation* § 47.10 n. 60 (1973), we would make it clear that, for purposes of our own workmen's compensation law — which nowhere includes the term "appointment of hire" — we must give effect to the theory that every person labors of his own free will, so that his consent to the terms of his employment is essential to the employment relationship, unless particular exception is made by statute.

We are aware of only two situations in which a person compelled to enter into the service of another may nonetheless in some jurisdictions be found to be an employee within the meaning of workmen's compensation statutes. One occurs when a person is temporarily impressed, in an emergency, into public service, as where a sheriff deputizes a citizen to aid him in pursuing a fleeing felon. *See, e.g., Moore v. State*, 200 N. C. 300, 156 S. E. 806 (1931); 81 Am.Jur.2d *Workmen's Compensation* § 182 (1976) (citing cases); 1A A. Larson, *The Law of Workmen's Compensation* § 47.42(c) at 8-180 to 8-183 (1973); Annot., 142 A.L.R. 657 (1943). This Court has not yet been confronted with any similar circumstance. Such cases, however, are easily distinguishable from the one now before us for decision. First, there is obviously no emergency involved when a citizen is summoned for jury duty, while the cases just mentioned are bottomed on the existence of an emergency — when the exigency does not exist, the employer-employee relationship will not be found. *See, e.g., Eaton v. Bernalillo County*, 46 N. M. 318, 128 P. 2d 738, 741-44, 142 A.L.R. 647 (1942). The "emergency doctrine" cases also differ because in each the claimant is injured in the performance of the very same services for the state as are being performed by the person who has temporarily deputized him and who would be covered by the workmen's compensation statute if he were the one injured. *See, e.g., Moore v. State, supra*, 156 S. E. at 808. A juror, quite to the contrary, performs a service nowhere duplicated by any employee covered by the Act. Finally, we would note that the same court which decided *Moore v. State, supra*, finding a person summoned to assist in extinguishing a forest fire to be an employee within the meaning of the workmen's compensation law, also has ruled that a juror is not within the coverage of the statute. *Hicks v. Guilford County, supra.*

The other situation in which some courts, without specific statutory authorization, have found coverage under workmen's compensation statutes, despite an element of compulsion in the employer-employee relationship, involves military service. The appellant relies, in asserting that her service as a juror was "voluntary," on *Rector v. Cherry*

*Valley Timber Co.*, 115 Wash. 31, 196 P. 653 (1921), where the Washington court held that a soldier, whether he enlisted or was drafted, was voluntarily in the army and subject to the workmen's compensation statute when he was injured while working, along with other members of his unit, as a logger for a private employer pursuant to military orders. And, though the authorities are divided, some courts have held that persons enlisted in the National Guard are state employees within the purview of the applicable statutes, despite the fact that such persons are not free to leave that employment at will. *See* Annot., 150 A.L.R. 1456 (1944). We think that the rationale of *Rector* and those cases finding members of the state militia to be employees is unduly strained, and decline to adopt it; we agree, rather, with the reasoning of *Goldstein v. State*, 281 N. Y. 396, 24 N.E.2d 97, 99-100 (1939), in which the New York Court of Appeals rejected the claim that a member of the state militia was entitled to workmen's compensation. The court said:

> [The statute] was never intended to cover militiamen while engaged in active service. There are many reasons which lead to that conclusion.
>
> Working men and women, employees of others, under our system of government are free men and women. They have the same standing, rights and privileges possessed by other members of our body politic. They may work or not according to their own free will. If engaged in work they may quit working at any time if they desire without liability therefor unless prevented by the terms of some express contract. They may organize labor unions .... They may engage in strikes ....
>
> Upon the other hand . . . a member of the State militia . . . is at all times subject to the commands of his superior officers. He cannot quit while in active service without consent of his superiors. Members of the State militia do not become members for the purpose of receiving the small per diem allowances awarded them .... It seems clear

that one who joins the State militia and is engaged in active service therein is in no sense an employee of the State. He is simply performing a duty which he owes to the sovereign State as a resident and citizen.

We think the reasoning in *Goldstein* is compelling; moreover, as we have previously observed, when the Maryland General Assembly has desired to include as employees persons not embraced by the ordinary contractual relationship of employer-employee, it has specifically so provided. In the case of the state militia, it did so ten years after the initial enactment of the Workmen's Compensation Act in 1914. *See* Law of Apr. 9, 1924, ch. 332, § 1, 1924 Md. Laws 915 (current version at Md. Code (1957, 1964 Repl. Vol., 1976 Cum. Supp.), Art. 101, § 33). No such provision has yet been made for jurors.

The principle which requires us to find that a juror is not an employee was aptly stated by the court in *Board of Com'rs of Eagle County v. Evans, supra*, 60 P. 2d at 226:

> The county does not negotiate with a citizen for his services as a juror, nor does the citizen apply to the county for such preferment. When a citizen is summoned to jury service he responds to process running in the name of the people, which imports such dignity that it commands respect, and is of such force that none disobeys. By the majesty of the law, therefore, not by contract, he becomes a juror.

While it may well be that sound policy considerations support the inclusion of jurors among those protected by the Workmen's Compensation Act, that is a matter for legislative determination. Since essential elements of the employer-employee relationship are absent from the relationship between a juror and either the State of Maryland or Prince George's County, we are bound to agree with the circuit court that the appellant's injuries are not compensable under the Act.

*Judgment affirmed.*
*Costs to be paid by the appellant.*