504 A.2d 1154

**Jeanette M. KERN**

v.

**SOUTH BALTIMORE GENERAL HOSPITAL.**

**No. 766, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 14, 1986.

Andre' R. Weitzman, Baltimore, for appellant.

Jeanne Phelan (Russell H. Gardner and Wolf, Pokempner & Hillman, on brief), Baltimore, for appellee.

Argued before WILNER, ROSALYN B. BELL and WEN-NER, JJ.

ROSALYN B. BELL, Judge.

Jeanette Kern filed suit in the Circuit Court for Baltimore City against South Baltimore General Hospital (SBGH) alleging wrongful discharge. SBGH's motion for summary judgment was granted on the ground that Kern had failed to state a cause of action.

In this appeal she poses two questions for our consideration:

1. "Did the Trial Court err in granting the Appellee's Motion for Summary Judgment in this wrongful discharge action where the admissible evidence demonstrates that the Appellant was terminated for excessive absenteeism while receiving workmen's compensation

benefits and where the evidence also demonstrates that but for the absences occasioned by periods of temporary total disability she would not have been terminated?"

2. "Did the Trial Court err in denying the Appellant's Motion to Strike or Revise the Judgment entered by the Court on December 13, 1984, where Counsel had agreed to extend the time for filing a response to the Appellee's Motion for Summary Judgment, and where apart from the agreed upon extension, the Appellant's Response to the Motion was not yet due at the time judgment was entered?"

Mrs. Kern was employed by SBGH as an operating room technician for over thirteen years until her discharge in October 1980. In the course of her employment she injured her thumb on May 21, 1979, and filed a claim for workers' compensation benefits on June 9, 1979. Benefits for temporary total disability were granted in the latter part of July.

Due to this injury, Mrs. Kern alleges she was absent from her employment for the following periods: May 21, 1979 to July 21, 1979 [1]; October 16, 1979 through May 19, 1980 [2] and; September 10, 1980 through January 30, 1981. [3]

Mrs. Kern was discharged effective October 5, 1980 for the stated reason of excessive absenteeism. The letter of discharge noted that she was not on duty 104 days in 1979

---

**1.** Mrs. Kern claims she did not return to work until July 21, although the hospital credits her return on July 17. Further, SBGH states she was absent on nine separate occasions for nonwork-related reasons during the first four months of 1979.

**2.** SBGH avers that during the period from July 17 through October 15, Mrs. Kern incurred four days absence attributable to her thumb injury and one additional day absence for nonwork-related reasons.

**3.** The hospital claims Mrs. Kern was also absent from May 20 through June 10 and June 23 through July 3 for nonwork-related reasons. Its records also show she was absent for an ankle injury from July 10 through July 17 and again on August 21, 1980.

and 145 days from January to October, 1980.[4] She states that of the number of days cited in the letter, all but 11 of the 104 days missed in 1979 were as a consequence of her work-related injury, and of the 145 days identified in 1980, all but 24 days were as a result of her injury.[5]

In her suit against SBGH for wrongful discharge, Mrs. Kern sought compensatory and punitive damages, based on her inability to find comparable work, her loss of salary and pension, and mental anguish.

## SUMMARY JUDGMENT

Appellant asserts that the court erred in granting appellee's motion for summary judgment, in effect, for failure to state a cognizable cause of action for wrongful discharge. She presents two arguments in support of her contention.

### Cognizable Cause of Action

Appellee's argument in support of its motion for summary judgment was premised on the assertion that appellant's declaration failed to state a viable cause of action under *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). Appellant disagrees.

In *Adler, supra,* the Court of Appeals modified the common law terminable "at will" doctrine. That doctrine provided that an employment contract of indefinite duration could be legally terminated at the pleasure of either party. *Adler, supra,* altered this by recognizing a cause of action for wrongful discharge where a discharge contravenes "some clear mandate of public policy." *Adler, supra* at 43,

---

**4.** There are approximately 240 scheduled working days in a year, excluding weekends, holidays and vacation allotments. The totals set out by SBGH do not include vacation time. Mrs. Kern took 15 days vacation leave in 1979.

**5.** The letter stated that SBGH reviewed her absences since 1969. The record indicates she was absent from work frequently during the years prior to her thumb injury.

47, 432 A.2d 464.[6]  Accordingly, *Adler, supra,* requires a plaintiff both to plead and show that the alleged conduct violated a specific statutory provision or an existing rule of law to maintain a cause of action.  *Id.* at 46, 432 A.2d 464.[7]

Appellant posits that her declaration complied with the *Adler, supra* requirement.  In that declaration she stated her discharge was:

"... brought about and motivated by a desire to punish and penalize the [appellant] for having availed herself of the statutory right to claim Workmen's Compensation benefits, said acts of the [appellee] being in violation of the laws of this State, including, but not limited to Maryland Annotated Code Art. 101 § 39A, and in contravention of the clear public policy of this State to protect employees from abusive and wrongful discharge as a result of claiming their statutorily mandated benefits."

She points to two sources of public policy to sustain her claim: (1) Md.Code Ann. Art. 101, § 39A (1957, 1979 Repl. Vol.) and (2) "public policy ... to protect employees from abusive ... discharge."  We will consider each source sepa-

---

6.  The Court recognized this cause of action after taking into account "the employee's interest in job security, particularly when continued employment is threatened not by genuine dissatisfaction with job performance but because the employee has refused to act in an unlawful manner or attempted to perform a statutorily prescribed duty," the employer's "important interest in being able to discharge an at will employee whenever it would be beneficial to his business," and society's "interest in ensuring that its laws and important public policies are not contravened." *Adler v. American Standard Corp.,* 291 Md. 31, 42, 432 A.2d 464 (1981).

7.  The Court did not "confin[e] itself to legislative enactments, prior judicial decisions or administrative regulations when determining what is the public policy of this State," but noted that "recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch." *Adler v. American Standard Corp.,* 291 Md. 31, 45, 432 A.2d 464 (1981).  When considering the sufficiency of the allegations, however, the Court noted that plaintiff "did not point to any specific statutory provision ... or other existing rule of law that particularly prohibits the claimed misconduct." *Id.* at 46, 432 A.2d 464.

rately, and in so doing, determine whether appellant's discharge violated "a clear mandate of public policy." We turn to the workers' compensation law for guidance.

◼ Prior to the adoption of employee protection laws, accidental injuries in the course of employment created hardships for both the employer and the employee. Pressman, *Workmen's Compensation in Maryland*, § 1–1 (1970). The workers' compensation laws precluded workers from suing employers under common law tort and substituted a system of compensation without regard to fault. *Id.* In 1914, Maryland enacted such a law with the object of providing an expedient and inexpensive method for payment of compensation to injured employees, and fairly distributing the financial burden of supporting injured workers and their families. Act of April 16, 1914, ch. 800 Preamble, 1914 Laws of Maryland 1429; *Liggett & Meyers Tobacco Co. v. Goslin*, 163 Md. 74, 80, 160 A. 804 (1932). The Act is to be interpreted as broadly and liberally in favor of the worker as its provisions will permit, in furtherance of the benevolent purpose which prompted its enactment. *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 217, 373 A.2d 613 (1977); *Howard County Assoc. for Retarded Citizens Inc. v. Walls*, 288 Md. 526, 530, 418 A.2d 1210 (1980). Although the Act is to be liberally construed, a court is not at liberty to disregard its clear meaning. *Lockerman v. Prince George's County*, 281 Md. 195, 202, n. 5, 377 A.2d 1177 (1977); *see Crowner v. Baltimore United Butchers Assoc.*, 226 Md. 606, 175 A.2d 7 (1961).

### 1. Section 39A

Section 39A of the Act provides:

"Discharge from employment for filing claim.

(a) An employee entitled to benefits under this article may not be discharged from employment *solely* because he files a claim for compensation under this article.

(b) Any person violating this section is guilty of a misdemeanor and, upon conviction, shall be fined not more than $500 or imprisoned not more than 12 months,

or both, in the discretion of the court." (Emphasis supplied)

Although appellant's declaration states that her discharge was "brought about and motivated by a desire to punish and penalize [her for claiming] Workmen's Compensation benefits," in that declaration and on appeal she concedes that this was not the sole reason for her discharge. She suggests to this Court that the word "solely" in subsection (a) cannot be limited to its literal meaning. She argues that *Adler, supra* must not be read so narrowly in a workers' compensation case as to require that an employee demonstrate that filing a claim was the sole reason for discharge. She argues that if so read, any "clever employer could easily escape liability, or rely on competent counsel to construct a defense after the fact."

█ Appellant's premise is contrary to the clear language of § 39A. A cardinal principle of statutory construction provides that where the meaning of a provision is unambiguous, the court need look no further for explication. *Ryder Truck Lines, Inc. v. Kennedy*, 296 Md. 528, 535, 463 A.2d 850 (1983). Webster's Dictionary defines the word "solely" as "without another" or "to the exclusion of all else." Webster's Ninth New Collegiate Dictionary 1122 (1985). Appellant admitted in her declaration, deposition and argument on appeal that she was discharged for absenteeism as well as for claiming benefits.

In her declaration, appellant states she was fired for availing herself of the right to claim compensation benefits in violation of § 39A and public policy. As we will explain *infra*, the only public policy she refers us to is the policy against terminating employees who are absent due to compensable injuries. By asserting these policy grounds, appellant fatally conceded her termination was based upon a ground in addition to filing a claim. Similarly, in her deposition she recounted that she was discharged for "miss[ing] too much time.... That's why I think they terminated me." Finally, before us appellant frames the

issue presented as whether the court erred "where the admissible evidence demonstrates that the appellant was terminated for excessive absenteeism while receiving workmen's compensation benefits ... and but for the absences ... she would not have been terminated." Since appellant herself alleges that she was not discharged solely for filing a claim, she has not stated a cause of action based on a violation of § 39A. The language embodied in § 39A clearly states that the filing of a claim is the crucial and only violation triggering the statute's protection.

The Legislature in enacting. § 39A expressed the public policy of this State—an employee may not be discharged for filing a compensation claim. This language does not imply that an employee may not be discharged for excessive absenteeism due to a compensable injury. The narrow. language of § 39A precludes the broad reading urged by appellant.

Appellant relies upon two New York cases in which employees were wrongfully discharged in factually similar situations to the case at bar. In *Claim of Griffin, Eastman Kodak Co., Inc. v. Worker's Compensation Board,* 80 A.D.2d 689, 436 N.Y.S.2d 441 (N.Y.App.Div.1981), *Griffin v. Eastman Kodak Co., Inc., app. dism.,* 53 N.Y.2d 609, 442 N.Y.S.2d 1025, 424 N.E.2d 899 (1981), *app. denied,* 55 N.Y.2d 605, 447 N.Y.S.2d 1028, 432 N.E.2d 603 (1982), the Supreme Court, Appellate Division held that where the final absence triggering the employee's discharge was due to work-related injuries, the employer violated a provision comparable to, but broader than, § 39A under New York's compensation law. The statute did not contain the word "solely." [8] Similarly, in *Lo Dolce v. Regional Transit Serv., Inc.,* 77 A.D.2d 697, 429 N.Y.S.2d 505 (N.Y.App.Div.

---

**8.** Section 120 of New York's compensation statute provided: "It shall be unlawful for any employer ... to discharge or in any manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer...." *Lo Dolce v. Regional Transit Serv., Inc.,* 77 A.D.2d 697, 429 N.Y.S.2d 505 (N.Y.App.Div.1980).

1980), *app. denied,* 51 N.Y.2d 706, 433 N.Y.S.2d 1026, 413 N.E.2d 369 (1980), the court affirmed the Worker's Compensation Board, holding that an employee who lost time because of an employment-related accident could not be discharged under the workers' compensation statute. Appellant urges us to adopt the reasoning of these cases.

Not only are we not bound by the precedents of other jurisdictions, but New York amended its workers' compensation law after these decisions. As a result, the statute now provides that an employer may discharge an employee for a valid reason. *See* N.Y. Workers' Compensation Law § 120 (McKinney 1984–85 Supp.). Further, appellant's broad reading of § 39A has been rejected by courts in other jurisdictions interpreting similar provisions. *See Lohse v. St. Louis Children's Hospital, Inc.,* 687 S.W.2d 594 (Mo. 1985), *reh. denied,* (1985); *Mitchell v. St. Louis County,* 575 S.W.2d 813 (Mo.1978), *reh. denied,* (1979); *Galante v. Sandoz, Inc.,* 192 N.J.Super. 403, 470 A.2d 45 (1983), *aff'd.* 196 N.J.Super. 568, 483 A.2d 829 (1984); *see also, Hughes Tool Co. v. Richards,* 624 S.W.2d 598 (Tex.Civ.App.1981), *reh. denied, cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

Appellant asserts that were this Court "to adopt the standard in a wrongful discharge/workmen's compensation set of facts that an employee must show that the sole reason for his discharge was the filing of his claim ... ultimately injured workers would be deterred from seeking benefits." Appellant's forecast, even if it were correct, is of academic interest only. "We must take the statute as we find it and if inequities result from its clear and unambiguous meaning, requests for relief therefrom should be addressed to the legislature, not the courts." *Schindele v. Nu-Car Carriers, Inc.,* 42 Md.App. 705, 710–11, 402 A.2d 1307 (1979).

## 2. Maryland Policy

Appellant also maintains she has stated a cause of action by invoking some general policy underlying the workers'

compensation scheme codified at Md.Code Ann. Art. 101, § 1 *et seq.* (1957, 1979 Repl.Vol.). She asserts that since the workers' compensation law should be "liberally construed," it must be read broadly to protect work-connected absences. She provides this Court with no other source of this policy except what she alleges is the social purpose behind its passage and the doctrine of constructive discharge.

We do agree that the policy behind § 39A would be contravened if employers were allowed to take advantage of their exemption from liability while circumventing their duty to provide benefits by discharging employees for filing claims. *See Sventko v. The Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151, 153–54 (1976); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978), *reh. denied* (1979); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425, 427 (1973). The purpose behind Art. 101, however, was borne out less by social consciousness than by economic realities. It was enacted "to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages." *Paul v. The Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544 (1944). Further, the Act was passed to protect employers from high monetary verdicts. Pressman, *supra* at § 1–1.

Whatever its benevolent quality may be in protecting the employee, we conclude the Legislature in enacting the Workmen's Compensation Act did not mean to penalize an employer for discharging an employee incapable of performing his or her responsibilities. In this case, appellee's responsibilities to provide continual care for its patients cannot be overlooked; nor can its right to discharge an employee who fails to report to work or perform his or her duties. It is clear that the Legislature through the statute has not imposed any limitation on this right, except that an employer may not discharge an employee solely because he

or she has filed a claim for benefits. Md.Code Ann. Art. 101, § 39A, *supra.*

Appellant urges that the doctrine of constructive discharge is analagous to her situation. While conceding that constructive discharge is not directly on point, she asserts that this Court has considered and condemned the efforts of an employer to force a resignation by the employee. She refers us to *Moniodis v. Cook,* 64 Md.App. 1, 494 A.2d 212, *cert. denied,* 304 Md. 631, 500 A.2d 649 (1985); *Townsend v. L.W.M. Management, Inc.,* 64 Md.App. 55, 494 A.2d 239, *cert. denied,* 304 Md. 300, 498 A.2d 1186 (1985); and *Beye v. Bureau of National Affairs,* 59 Md.App. 642, 477 A.2d 1197, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984).

Appellant's analogy and reliance on these cases is inapposite. In *Moniodis, supra,* employees' resignations and discharges for refusing to submit to polygraph examinations violated the express language of Md.Code Ann. Art. 100, § 95 (1979) prohibiting a lie detector test as a condition of employment. In contrast, as we stated, appellant asks us to stretch the express language of § 39A which we have declined to do. In *Townsend, supra,* we ruled that a constructive or wrongful discharge could not be found where the employer, relying on polygraph results, determined that the employee was a thief and subsequently terminated him. As Judge Robert Bell, speaking for this Court, observed: "Unfortunately for appellant, that reason does not contravene this State's public policy as reflected by [Md.Code Ann. Art. 100] § 95." *Id.* 64 Md.App. at 70, 494 A.2d 239. Similarly, discharge for excessive absenteeism does not contravene the public policy of Art. 101. Finally in *Beye, supra,* an action for constructive discharge was recognized if the employer allows or causes "the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." *Id.* 59 Md.App. at 652, 477 A.2d 1197. In the instant case, appellant has made no claim that appellee made her working conditions so unbearable, resulting in her

resignation, because she filed a claim for benefits. The doctrine of constructive discharge is of no assistance to appellant.

■ In conclusion, we hold that an employee's protection from discharge in retaliation for claiming statutory benefits does not include protection for excessive absence from work due to work-related injury. If an employee is disabled on the job and is no longer qualified to perform the duties of his or her job, an employer may terminate that employee when it becomes obvious that the period of disability is not determinable. This interpretation of § 39A and Art. 101 does not tend, as appellant fears, to discourage employees from seeking medical attention and compensation.[9]

■ To sustain a wrongful discharge action under Maryland's workers' compensation statute, an employee must allege that he or she was discharged solely and directly because of filing for benefits under § 39A or that his or her termination violated a recognized rule of law. Appellant here has failed to do so. The court did not err in granting appellee's motion for summary judgment.

### Factual Dispute

As a second prong to her argument that the court erred in granting appellee's motion for summary judgment, appellant alleges that there is a genuine dispute as to a material fact precluding summary judgment. In light of appellant's concession that absenteeism was a factor in her dismissal and our holding that appellant failed to state a cause of action under § 39A or a "clear mandate of public policy" of

---

9. We do not mean to imply that a wrongful discharge action can never lie when an employee has allegedly been terminated for "absenteeism" due to a compensable injury. If the facts indicate that the issue is a sham and that the real reason for discharge is the filing of the claim, the wrongful discharge suit might lie.

this State, we need not reach the question of the facts at issue.

## PROCEDURE

Appellant raises a procedural issue for our consideration as well. After appellant filed suit in May, appellee filed its Motion for Summary Judgment. A supplement to that motion was subsequently filed correcting exhibit numbers in the original motion. Appellant claims counsel then agreed to extend the time for her to file her response to the motion. This agreement, by way of a letter, was filed with the court. Appellee's motion was granted December 13, 1984 prior to the extended time. Nevertheless, appellant submitted her opposition to the motion and filed a motion to strike or revise the summary judgment order. Despite the December 13 order, the court held a full hearing on appellant's motion. After considering the merits of the original summary judgment motion, the court denied appellant's motion.

Appellant claims that in entering the December 13 order and allowing that judgment to stand the court erred (1) by not recognizing counsel's extension of time before ruling on the motion; and (2) by ignoring the provision in Rule 2–311(b) providing for a fifteen day period to respond to a supplemental motion.

It is clear that when denying appellant's motion to strike or revise the judgment the court considered appellant's response and the merits of the summary judgment motion. Whatever error the court may have committed in granting the summary judgment prematurely was cured by conducting a rehearing on the motion in conjunction with the motion to strike or revise the judgment.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.