**Rita L. HINES, Plaintiff,**

v.

**UNITED PARCEL SERVICE,
INC., Defendant.**

**Civ. A. No. 7:89–807–0.**

United States District Court,
D. South Carolina,
Spartanburg Division.

March 1, 1990.

James C. Spears, Jr., Faucette Law Firm,
Spartanburg, S.C., for plaintiff.

Vance J. Bettis and Stephen T. Savitz,
Gignilliat, Savitz & Bettis, Columbia, S.C.,
for defendant.

### ORDER

PERRY, District Judge.

This matter is before me on the defendant's motion to dismiss, or in the alternative, for summary judgment. For the reasons set forth herein, the court grants summary judgment in favor of the defendant.

Plaintiff Rita L. Hines (Hines), alleges that the defendant United Parcel Service, Inc. (UPS) terminated her employment as a package delivery driver in retaliation for

her having instituted proceedings under the South Carolina Workers' Compensation Law, S.C.Code Ann. § 42–1–10 *et seq.* She purports to state claims under South Carolina common law for the tort of wrongful discharge (public policy) and under S.C. Code Ann. § 41–1–80 for retaliatory discharge. The action was removed by UPS from the Court of Common Pleas for Spartanburg County to this court, on the basis of diversity of citizenship pursuant to 28 U.S.C. §§ 1332 and 1441. After the expiration of the pretrial discovery period prescribed by the court, UPS filed a motion to dismiss or, in the alternative, for summary judgment under F.R.Civ.P. 12(b)(6) and 56. Upon careful consideration of the record, the submissions of the parties, and argument of counsel, the court has concluded that the defendant's dispositive motion should be granted.

*Undisputed Facts*

The material facts are not in dispute. Hines was employed by UPS as a package delivery driver in Spartanburg, South Carolina. Package delivery drivers are required to be able to lift packages weighing up to 70 pounds on a regular basis. On or about April 28, 1987, Hines injured her back while moving a package weighing approximately 50–55 pounds from one area of her truck to another. She continued to work. Several weeks later, during a planned vacation, she went to Dr. Glen L. Scott, an orthopaedic surgeon, for an assessment of her back problem. Dr. Scott diagnosed the problem as lumbar sacral strain and prescribed exercises and physical therapy to alleviate the problem. Dr. Scott told Hines that she should not work pending further evaluation of her back problem. When this conservative treatment plan failed to produce significant improvement, Dr. Scott recommended surgery to remove a ruptured disc. Hines underwent surgery (a laminectomy) on August 10, 1987. After several months of rehabilitation and physical therapy, Hines was released to return to work without restriction on November 11, 1987. She had been off the job since May at Dr. Scott's instruction.

During the six months that she was off the job at Dr. Scott's instruction, Hines filed for and received disability benefits of $175.00 per week from the Central States Southeast and Southwest Areas Health and Welfare Funds, a benefit fund jointly administered by UPS and the Teamsters union which has a contract with UPS covering, among others, package delivery drivers. Hines, a member of the Teamsters, received disability benefits totaling $3,808.70 and medical benefits totaling $10,698.36 from the union health and welfare fund as a result of her incapacitating back condition. Benefits are payable from the health and welfare fund only if an injury is not covered by workers' compensation. The claims benefit which resulted in Hines's receiving disability and medical benefits was signed by Dr. Scott who checked "No" in response to the question "Is injury or sickness due to patient's employment or occupation?"

Upon her return to work on November 11, 1987, Hines resumed her regular duties as a package delivery driver. She was under no lifting restrictions. In early February of 1987, as she was lifting a package to ready it for delivery, her back "popped". She continued to work for the next week and a half but on February 17, 1988, took the day off to go see Dr. Scott about her back pain. After examining Hines, Dr. Scott wrote the following note:

TO WHOM IT MAY CONCERN:

Re: Rita Hines

This patient is again beginning to experience back and leg pain which I feel is a result of repetitive stress overload from the lifting requirements on her job. If she is to prevent recurrence of her previous difficulties, I feel that it is imperative that she be placed on a lighter job in which she does not lift over 25 lbs. on a regular basis and 40 to 50 lbs. on an occasional basis. It is possible that even these levels could prove to be excessive but I feel that it would be permissible for her to try this. Any help you could give us in this respect would be greatly appreciated.

Hines presented this note to her supervisor the same day she received it from Dr. Scott. Her supervisor informed her that he would have to discuss the matter with his superiors. In the meantime, Hines remained off the job. Several weeks after presenting Dr. Scott's note to her supervisor, Hines was informed by that supervisor that there was no job of the type described by Dr. Scott available in Spartanburg. Hines offered to resume her job as a package delivery driver in spite of Dr. Scott's contrary advice, but UPS declined to permit her to resume those duties when she had not been medically cleared to do so. Hines was terminated in mid-March of 1988.

In July of 1988, Hines retained a lawyer and filed for workers' compensation benefits as a result of her April, 1987 injury and her February, 1988 reinjury. On March 3, 1989, the South Carolina Workers' Compensation Commission issued a ruling in which the single commissioner found that Hines had a 20% permanent partial disability to her back; that she was temporarily totally disabled from May 19, 1987 to November 11, 1987 and from February 17, 1988 to March 28, 1988; and that she was temporarily partially disabled from March 29, 1988 to August 28, 1988 when she returned to school as a full-time graduate student. As a result of these findings, the Commission awarded Hines disability and medical benefits totaling in excess of $30,000.00. After entry of this award, Hines instituted this action.

*The common law tort claim*

In her complaint, Hines alleges that her discharge from employment was contrary to the public policy of the State of South Carolina and purports to state a claim for the common law tort of wrongful discharge first recognized in *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985). UPS contends that *Ludwick* has no application to the facts of this case because Hines was not an at-will employee; she was not required to violate the criminal law as a condition of retaining her job; and there is an express statutory remedy available to her in the form of S.C.Code Ann. § 41–1–80 and, thus, there is no need to

imply a remedy. At oral argument, Hines abandoned her common law claim and agreed that her sole remedy for the conduct of which she complains is under S.C. Code Ann. § 41–1–80. Accordingly, there is no need to address UPS's arguments as they relate to the *Ludwick* claim.

*The statutory claim under S.C.Code Ann. § 41–1–80*

In 1986, the South Carolina General Assembly enacted a statute prohibiting an employer from retaliating against an employee because the employee had filed a workers' compensation claim. The statute, which legislatively overruled *Raley v. Darling Shop of Greenville, Inc.*, 216 S.C. 536, 59 S.E.2d 148 (1950) and *Corder v. Champion Road Machinery International Corp.*, 283 S.C. 520, 324 S.E.2d 79 (Ct.App. 1984), provides:

> No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code), or has testified or is about to testify in any such proceeding.
>
> \* \* \* \* \* \*

The burden of proving a violation of the retaliatory discharge statute is on the employee. *Id.* UPS correctly contends that Hines cannot carry her burden under § 41–1–80 for several reasons, only two of which the court will address.

First, UPS asserts, Hines cannot prevail on her statutory claim because she did not institute workers' compensation proceedings until four months *after* her termination. This argument is persuasive.

Section 41–1–80 prohibits *retaliation* against an employee *because* the employee has instituted workers' compensation proceedings. The elements of a claim under § 41–1–80 are: (1) institution of workers' compensation proceedings; (2) discharge or demotion; and (3) a causal connection between (1) and (2). *Cf. Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985) (construing anti-retaliation provision of Title VII). Essential

to a claim under this statute is proof that the employee instituted or caused to be instituted proceedings for recovery of workers' compensation benefits *before* she was terminated. *Cf. Hampton v. U.S. Steel,* 122 LRRM 2365, 1986 WL 247 (N.D. Ind.1985); *Ashworth v. Jefferson Screw Products, Inc.,* 176 Mich.App. 737, 440 N.W.2d 101 (1989) (construing similar laws). It is undisputed, however, that Hines first instituted proceedings for recovery of workers' compensation benefits four months after she was terminated. On these facts, her retaliatory discharge claim under § 41–1–80 must fail. *Cf. id.; Ross v. Communications Satellite Corp.,* 759 F.2d at 365 n. 9; *Nash v. City of Houston Civic Center,* 800 F.2d 491 (5th Cir.1986) (where employer is unaware of employee's opposition to employment practices made unlawful by Title VII at time of employee's discharge, employee's claim that he was discharged *because of* such opposition fails as a matter of law).

Hines argues vigorously that § 41–1–80 should be broadly construed to extend to cases, like hers, where a discharge predates the filing of a claim for workers' compensation benefits. She points to *Wright v. Fiber Industries, Inc.,* 60 N.C. App. 486, 299 S.E.2d 284 (1983), a decision of the North Carolina intermediate appellate court, in support of her argument. *Wright* does not persuade this court that § 41–1–80 should be construed in the manner advocated by Hines.

█ While remedial legislation should be construed broadly to effectuate the purpose of the legislature, this canon of statutory construction does not authorize a court to ignore the plain wording of the statute. *Cf. Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (filing of notice of right-to-sue letter does not constitute commencement of Title VII action, notwithstanding remedial purposes of Title VII). Furthermore, this court's interpretation of § 41–1–80 is consistent with the expressed

purpose of the South Carolina General Assembly which enacted it. The object of Act No. 451 of 1986 (now codified as § 41–1–80), as set out in the title to the act, was "to provide for a civil action against an employer who dismisses or demotes an employee who *files* a workers' compensation claim ..." (emphasis added).[1] Thus, both the plain wording of § 41–1–80 and the legislative purpose behind that law support this court's conclusion that, to make out a prima facie case under § 41–1–80, Hines must prove that she filed a workers' compensation claim *before* she was terminated. Since she has admitted that she did not file for workers' compensatory benefits until four months *after* her termination, her retaliatory discharge claim under § 41–1–80 fails as a matter of law.

█ Even if § 41–1–80 could be construed in the manner advocated by Hines, her claim would be fatally deficient. This is so because it is undisputed that Hines was unable to perform the duties of her job as a package delivery driver because of the indefinite lifting restriction that Dr. Scott imposed on her.

The purpose of statutes such as § 41–1–80 is to prohibit an employer from discharging an employee because the employee has filed a claim for workers' compensation benefits where the employee is able—notwithstanding his on-the-job injury—to perform all the duties of his job. Section 41–1–80 and statutes like it do not, however, require an employer to retain an employee who can no longer perform the duties of her job simply because her inability to perform the duties results from an on-the-job injury. *See Kern v. South Baltimore General Hospital,* 66 Md.App. 441, 504 A.2d 1154, 1159 (1986); *Johnson v. Builder's Transport, Inc.,* 79 N.C.App. 721, 340 S.E.2d 515 (1986); *Rowland v. Val–Agri, Inc.,* 13 Kan.App.2d 149, 766 P.2d 819 (1988); *Horton v. Miller Chemical Co.,* 776 F.2d 1351 (7th Cir.1985), *cert. denied* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186; *Richardson v. Dollar Gener-*

---

**1.** The South Carolina Supreme Court has approved looking to the title of an act to assist in determining the intent of the legislature. *Lind-* *say v. Southern Farm Bureau Casualty Ins. Co.,* 258 S.C. 272, 188 S.E.2d 374, 376 (1972).

*al Corp.*, 4 IER 514, 1988 WL 161179 (W.D. Tenn.1988).

In this case, Hines resumed her full duties without medical restriction in November of 1987. She continued to work as a package delivery driver until her doctor restricted her lifting indefinitely to 25 pounds on a regular basis and 40–50 pounds on an occasional basis. Her job required her to be able to lift up to 70 pounds on a regular basis. As a result of the lifting restriction, Hines was unable to perform the duties of the job she was employed to do.

According to her own testimony, Hines was terminated because her job required her to be able to lift packages weighing up to 70 pounds and, as a result of the lifting restrictions imposed on her by her physician, she was unable to do the lifting that her job required. Nothing in § 41–1–80 prohibits a termination under these circumstances. *Cf. Kern v. South Baltimore General Hospital, supra,* 504 A.2d 1154; *Johnson v. Builder's Transport, Inc., supra,* 340 S.E.2d 515; *Rowland v. Val–Agri, Inc., supra,* 766 P.2d 819; *Horton v. Miller Chemical Co., supra,* 776 F.2d 1351; *Richardson v. Dollar General Corp., supra,* 4 IER 514 (all construing workers' compensation retaliation laws).

For the foregoing reasons, the court grants summary judgment in favor of the defendant UPS. This disposition renders moot UPS's motion to transfer this action to the nonjury roster.[2]

AND IT IS SO ORDERED.

---

**2.** The court does not reach UPS's argument that Hines's claim for workers' compensation benefits was not filed in good faith since she had previously received benefits for the same injury from the union's health and welfare fund.